**Stephen E. GOSNELL, Plaintiff,**

v.

**Marvin RUNYON, Postmaster General, Defendant.**

Civ. A. No. 1:CV–94–143.

United States District Court, M.D. Pennsylvania.

Dec. 21, 1995.

Frank P. Clark, James, Smith & Durkin, Hershey, PA, for plaintiff.

Robert L. Sawicki, U.S. Postal Service, Office of Deputy Chief Filed Counsel, Law Department, Philadelphia, PA, Robert R. Long, Jr., U.S. Attorney's Office, Harrisburg, PA, for defendant.

*MEMORANDUM*

RAMBO, Chief Judge.

## I. Introduction

Stephen E. Gosnell ("Plaintiff") filed this suit against Marvin Runyon, Postmaster General ("Defendant"), under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (1988) ("ADEA"). Now before the court is Defendant's motion for summary judgment. The motion has been briefed by both parties and is ripe for disposition.

## II. Background

Plaintiff was employed by the United States Postal Service ("USPS") from 1967 until his early retirement in November of 1992. In January 1992, the USPS posted a vacancy announcement inviting applications for the position of Safety and Health Services Manager in Harrisburg, Pennsylvania. The position was classified as an "E.A.S.–21," E.A.S. being the matrix according to which postal service jobs correspond to a particular pay rate. Plaintiff applied for the position and was interviewed on April 8, 1992, at which time he was forty-nine years of age. Plaintiff was classified as an E.A.S.–17 at the time he applied and accordingly the position represented a promotion to him.

Peter Bazylewicz, the Manager of Human Resources in Harrisburg, and two other USPS employees conducted interviews of five applicants for the position. Peter Krah, then thirty-four years old, was among the individuals interviewed. Bazylewicz was responsible for the ultimate hiring decision and he selected Krah to fill the position.

Upon learning several weeks later that he had not received the promotion, Plaintiff contacted the interviewers to inquire into the grounds for the decision. Plaintiff claims that in response to this inquiry, Bazylewicz gave the following account of the selection process. The decision was easily reduced to one between Plaintiff and Krah because of deficiencies in the other interviewees. Bazylewicz stated that one "tried to bullshit his way through the interview," while another, James Gafney, was an E.A.S. "level 21 for the Management Academy who wants to come to Harrisburg and vegetate in the safety position until he retires." (Gosnell Dep. at 49.) Gafney was thirty-nine years old at the time of the interview. As for the choice between Plaintiff and Krah, Bazylewicz stated that although Plaintiff had a "good interview ... and a good background in safety ..., he's entitled to select anybody he wants." (*Id.*)

Plaintiff, believing that Bazylewicz declined to select him due to age discrimination, filed a formal complaint under the ADEA with the Equal Employment Opportunity Commission ("EEOC") on September 4, 1992. For various reasons, the EEOC was unable to arrange a hearing during the ensuing eighteen months and, on March 7, 1994, it remanded the matter to the USPS for a Final Agency Decision in accordance with the ADEA. On July 19, 1994, the USPS rendered a decision against Plaintiff and he initiated this action in September of 1994.

## III. Discussion

### A. Summary Judgment Standard

The standards for the award of summary judgment under Federal Rule of Civil Proce-

dure 56 are well known. As the Third Circuit Court of Appeals has capsulized:

> Summary judgment may be entered if "the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Equimark Comm. Finance Co. v. C.I.T. Financial Serv. Corp.,* 812 F.2d 141, 144 (3d Cir. 1987). If evidence is "merely colorable" or "not significantly probative" summary judgment may be granted. *Anderson,* 477 U.S. at 249–51, 106 S.Ct. at 2511; *Equimark,* 812 F.2d at 144. Where the record, taken as a whole, could not "lead a rational trier of fact to find for the nonmoving party, summary judgment is proper." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, [586–88] 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

*Hankins v. Temple Univ.,* 829 F.2d 437, 440 (3d Cir.1987). Once the moving party has shown that there is an absence of evidence to support the claims of the nonmoving party, the nonmoving party may not simply sit back and rest on the allegations in her complaint, but instead must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quotations omitted). The court will consider Defendant's motion under these standards.

## B. *General Standards Governing ADEA Claims*

The ADEA bans age discrimination in employment against persons over age 40. 29 U.S.C. § 623(a)(1) and § 631(a). The purpose of the statute is "to promote employment of older persons based on their ability rather than age ... [and] to prohibit arbitrary age discrimination in employment." 29 U.S.C. § 621(b).

Because the ADEA parallels Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1988) ("Title VII"), in both text and purpose, courts adjudicating ADEA claims have adopted the analytic framework developed under Title VII. *See, e.g., Barber v. CSX Distribution Services,* 68 F.3d 694, 699 (3d Cir.1995). Consequently, courts decide ADEA claims under the standards set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and further developed in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *Saint Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The long-established process of alternating burdens of production set forth in *McDonnell Douglas, Burdine* and *Hicks* requires a three step analysis. First, the plaintiff must establish a prima facie case of impermissible discrimination by a preponderance of the evidence. *Burdine,* 450 U.S. at 252, 101 S.Ct. at 1093. In a failure to promote claim under the ADEA, this requires that a plaintiff show:

> 1) that he belongs to the protected class, 2) that he applied for and was qualified for the job, 3) that despite his qualifications he was rejected, and 4) that the employer either ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination or continued to seek applicants from among those having plaintiff's qualifications.

*Fowle v. C & C Cola,* 868 F.2d 59, 61 (3d Cir.1989) (citations omitted). If the plaintiff succeeds in making out a prima facie case, a presumption arises that the defendant unlawfully discriminated against her and the burden of production shifts to the defendant to produce evidence indicating that its adverse employment actions were taken for a legitimate, nondiscriminatory reason. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. In order to meet this burden, " 'the defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would

support a finding that unlawful discrimination was not the cause of the employment action." *Hicks*, 509 U.S. at 507, 113 S.Ct. at 2747 (quoting *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094). If the defendant carries this rather slight burden the presumption created by the plaintiff's prima facie showing "drops out of the case" entirely and the burden of production returns to the plaintiff to show that the tendered reason is pretextual. *Id.* at 510–12, 113 S.Ct. at 2749. To establish pretext, a plaintiff must persuade the factfinder "*both* that the reason is false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. at 515–17, 113 S.Ct. at 2752 (emphasis in original).

It is important to understand that the plaintiff's burden to demonstrate pretext does not require more than discrediting the reason offered by the employer for its adverse decision. That is, the factfinder's rejection of the defendant's assertedly legitimate reason, coupled with the plaintiff's prima facie case, permits an inference of intentional discrimination. *Id.* at 510–12, 113 S.Ct. at 2749; *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994). Further, the Third Circuit has admonished that ADEA plaintiffs need *not* "present[ ] evidence specifically relating to age." *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 898 (3d Cir.1987).

Equally important is the fact that the Third Circuit interprets *Hicks* such that when an ADEA plaintiff establishes a prima facie case and the employer rebuts it, the plaintiff may survive a motion for summary judgment in one of two ways. She must present direct or indirect evidence which *either*: (1) indicates "that discrimination was more likely than not a motivating or determining cause of the adverse employment action," or (2) discredits the employer's proffered reason. *Fuentes*, 32 F.3d at 764. In assessing the quantum of evidence required of a plaintiff to make the latter showing, she must produce "some" evidence from which a reasonable factfinder "could" conclude that each of the defendant's proffered reasons are "unworthy of credence." *Fuentes*, 32 F.3d at 764–65 (citations omitted). This may be accomplished by demonstrating "weaknesses, implausibilities, inconsistencies, incoheren-

cies, or contradictions in the employer's proffered legitimate reasons. . . ." *Id.* at 765.

Finally, it is significant that if the issue of pretext turns on the credibility of the employer or its agents, summary judgment is inappropriate. *Barber*, 68 F.3d at 699–700; *Chipollini*, 814 F.2d at 901. This will generally be the case "where the only evidence of [an employer's] intent is oral testimony . . . [since] a jury could always choose to discredit it." *Barber*, 68 F.3d at 699–700.

### C. *Application*

The parties agree, and the court concurs, that Plaintiff has established a prima facie case. Consequently, Defendant now bears the burden of showing that its employment decision was based upon a legitimate, nondiscriminatory reason.

Defendant attempts to meet its burden by relying almost entirely upon the affidavit of Peter Bazylewicz. In the affidavit, Bazylewicz asserts three reasons for promoting Krah over Plaintiff. First, he avers that he doubted Plaintiff's management skills and integrity due to certain improper conduct by an employee allegedly trained and supervised by Plaintiff. Second, Bazylewicz claims that he received a negative evaluation of Plaintiff from a former manager which caused him to further question Plaintiff's managerial abilities. Third, he asserts that the employment decision was significantly influenced by his favorable view of Krah, whom he had personally supervised in the past.

As with the prima facie case, it is undisputed that Defendant has introduced sufficient evidence in support of his proffered legitimate reasons to shift the burden back to Plaintiff. Thus, the instant motion turns upon whether Plaintiff has submitted "some" evidence from which a reasonable factfinder "could" conclude that each of Defendant's three tendered reasons are pretextual.

### 1. *Conduct Of Plaintiff's Subordinate*

It is undisputed that Plaintiff served as Safety Manager for the USPS in Lancaster, Pennsylvania from November 1986 until February 1988. In his affidavit Bazylewicz states that one reason he did not promote

Plaintiff is that, while Safety Manager, Plaintiff "trained and had supervisory responsibilities over an employee who failed to report accidents." (Bazylewicz Dec. at ¶ 4.) Bazylewicz contends that this incident caused him "to question Mr. Gosnell's management expertise and his integrity." (*Id.*) Defendant has introduced no evidence on the issue beyond the quoted portions of Bazylewicz's affidavit. Plaintiff acknowledges that he supervised the apparently delinquent USPS employee but denies that he trained him. (Gosnell Dec. at ¶ 4.) Plaintiff further contends that prior to this litigation he was never questioned about the matter, nor was disciplinary action taken against him or any other Lancaster USPS employee in connection with it. (*Id.*)

The court finds this proffered reason unpersuasive on a number of grounds. First, there is a credibility issue with respect to whether Plaintiff trained the employee in question, which is not appropriate for summary judgment. Second, Defendant nowhere asserts that Plaintiff was in a position to prevent or even be aware of the alleged misconduct of his subordinate, or that the misconduct resulted from inadequate or improper training. Third, there is no indication in the record as to whether the subordinate's nonfeasance was a single episode, a few incidents over a brief period, or a chronic problem spanning a lengthy stretch of time. In light of the void in the record on these points, the court must assume, construing factual ambiguities in favor of Plaintiff, that Bazylewicz claims to have questioned Plaintiff's managerial skills and integrity on the basis of a subordinate's isolated act of misconduct. The court finds that the credibility of this proffered reason is subject to factual dispute.

## 2. *Bland's Alleged Remarks*

It is undisputed that Plaintiff served as an Injury Compensation Supervisor for the USPS in Baltimore, Maryland from July 1988 to September 1989. Bazylewicz cites a poor evaluation of Plaintiff's performance in Baltimore as a second factor which caused him to doubt Plaintiff's management skills. He states:

I had at least four conversations with Ronald Bland, Manager, Human Resources for the Baltimore Division concerning Mr. Gosnell's performance as Supervisor, Injury Compensation at the Baltimore Division from July 1988 to September 1989. Mr. Bland indicated that Mr. Gosnell was over his head in that position. Specifically, Mr. Bland indicated that Mr. Gosnell did not meet his expectations in that position because he did not make a dent in processing a backlog of injury compensation claims.

(Bazylewicz Dec. at ¶ 5.) Defendant offers no evidence of Plaintiff's allegedly inadequate performance in Baltimore, or what Bazylewicz was told about it, beyond the forgoing statement. Notably absent from Defendant's submissions is a statement from Bland. Although Defendant offers Bazylewicz's declaration to illuminate his beliefs and intentions at the time of the employment decision, rather than to prove the truth of the matter asserted, the lack of specificity and/or corroborating evidence depreciates the credibility of this tendered reason.

Plaintiff attacks the plausibility of this proffered reason by introducing evidence meant to show that: (1) notwithstanding Bland's alleged remarks, Plaintiff's qualifications and references were substantially superior to Krah's in the areas of safety expertise and managerial skills; (2) Bazylewicz failed to consult with either Plaintiff's or Krah's previous or then-current supervisors, other than Bland, before reaching the employment decision; and (3) the statement attributed to Bland is false.

Defendant appears to argue that as a matter of law the evidence introduced by Plaintiff on these issues is irrelevant. He urges that, barring discrimination, courts must not interfere with an employer's "good faith business judgments," particularly when such judgments are based upon the employer's "subjective" analysis of an applicant's qualifications.

The oft-rehearsed "good faith business judgment" defense, while correct, tends to beg the question whether the employer's proffered reasons are pretextual. The doctrine does not shield an employer's judgment of a plaintiff's qualifications, or its

business explanation for an employment decision, from the court's scrutiny. Indeed, the Supreme Court in *Burdine* stated that the court's belief that "the employer misjudged the qualifications of the applicant," while not itself giving rise to liability, "may be probative of whether the employer's reasons are pretexts for discrimination." *Burdine,* 450 U.S. at 259, 101 S.Ct. at 1097. The court is required to examine evidence of a plaintiff's qualifications in the area relied upon by a defendant to explain its adverse employment decision, *Fuentes,* 32 F.3d at 767, as well as "evidence ... challeng[ing] the factual support for the defendant's stated reasons for [the adverse decision]," *Chipollini,* 814 F.2d at 900.[1] Thus, the court must turn to the record to determine whether it supports Plaintiff's attacks upon this proffered reason. Accordingly, the court must examine the record to determine whether it supports Plaintiff's three attacks upon this proffered reason.

### a. *Comparison Between Plaintiff's Krah's Qualifications*

Plaintiff maintains that his qualifications for the position were superior to Krah's in the areas of safety expertise and management skills. He has introduced substantial evidence indicating that experience in the field of safety is an important qualification for the position, and that he had considerable training in that area while Krah had virtually none. (Burnhart Dep. at 15–23.) Defendant does not dispute this, but emphasizes instead that the principle reason cited by Bazylewicz for rejecting Plaintiff is poor management skills.

Aside from Bazylewicz's conversations with Bland, it appears that all the information before Bazylewicz regarding the applicants' managerial abilities was contained in their application forms. The notice announcing the position stated ten requirements and instructed applicants to complete a standard "991" USPS employment application form. (Plaintiff's Exhibit 1.) For each require-

ment, the 991 form instructs the applicant's supervisor to either (1) indicate that they have not observed the applicant exhibit the qualification, or (2) indicate that they have observed the applicant exhibit the qualification and provide an evaluation. Below, the court will set forth the requirements which pertain to managerial skills and the remarks of Plaintiff's and Krah's supervisors with respect to each.

5. Ability to manage safety and health programs.

[Of Plaintiff:] In one year as General Supervisor, Vehicle Operations, he has developed a comprehensive safety talk system to motivate employees toward safe every day work performance. He has also taken control of the vehicle operations safety problem and totally eliminated a typical "who cares" attitude amongst the MVS crafts.

[Of Krah:] As Injury Compensation Specialist, Mr. Krah has actively participated in and been successful in assisting with the management of the limited duty, rehab and third party programs.

6. Ability to develop and evaluate accident prevention plans.

[Of Plaintiff:] As in # 5 above, Steve has shown a superior effort in developing and setting up programs for MVS on preventable safety issues, which was carried over to the maintenance side of Vehicle Services. I also talked to Tom Burnhart and other people in Lancaster, and Steve is extremely well thought of in the Lancaster MSC.

[Of Krah:] Not Observed.

7. Ability to coordinate program activities with operational supervisors and managers.

[Of Plaintiff:] Steve presently has control over five (5) supervisors, two (2) clerks, and forty (40) MVS drivers. He does an excellent job of coordination of vehicle operation functions and supporting mail processing needs. I have no doubt that Steve

---

**1.** An important limitation on the court's evaluation of an employer's business judgment is set forth in *Ezold v. Wolf, Block, Schorr and Solis–Cohen,* 983 F.2d 509 (3d Cir.1992). *Ezold* held that courts must focus on whether the criteria relied upon by an employer for its adverse decision were nondiscriminatorily applied, and should refrain from questioning an employer's nondiscriminatory judgment of what criteria are important. 983 F.2d at 527–28, 531.

**500**

is more than capable of doing this on a Divisional scale.

[Of Krah:] Mr. Krah has been successful in interacting with management, injured employees, and the medical community in coordinating limited duty and rehab assignments.

8. Ability to supervise a group of professional and clerical employees.

[Of Plaintiff:] Steve has handled problems confronting our operational supervisors and now has our supervisors functioning as a team. I also made him my office coordinator for our clerical staff because of his excellent ability to organize and communicate with people. He has done an outstanding job in both of these functions.

[Of Krah:] Not Observed.

9. Ability to communicate orally and in writing at a level sufficient to provide guidance to postal managers, to maintain contact with representatives of government and private industry and to develop and present training programs.

[Of Plaintiff:] Steve writes letters daily and has shown that this is one of his best assets. He is constantly looked upon by other VMF supervisors to proofread and rewrite letters and memorandums. Again, I say he is an outstanding communicator. He has the ability to relax people when he talks to them, even in adverse conversations.

[Of Krah:] Krah has excellent oral communication skills and has successfully demonstrated the ability to instruct and guide all levels of postal management. His verbal communications with the medical community are very good. However, Mr. Krah is less effective in his written communications.

(Plaintiff's Exhibit 2 at 4–6; Exhibit 3 at 4–6.)

In addition to the enumeration of these management related requirements, the vacancy notice for the position stated: "Participative management should be addressed as an additional requirement on PS form 991." (Plaintiff's Exhibit 1 at 2.) Krah did not identify this requirement on his 991 and thus his supervisor did not respond to it. Plaintiff

did include it on his 991 and his supervisor evaluated him as follows:

Steve has made a dramatic impact on our MVS operation. Due to the cooperation he has achieved with the MVS employees, the MVS operation has ended the year under budget even with the extra burden of transportation of equipment for the new Harrisburg GMF. The newsletter has been a great asset which has expanded from one page to three pages bi-monthly.

(Plaintiff's Exhibit 2 at 6.) Finally, at the conclusion of the 991 there is an opportunity for an optional general comment by the applicant's immediate supervisor and "next-higher level manager." The immediate supervisors of both Plaintiff and Krah elected to make a general comment, while only Krah's next higher-level manager did so, as follows:

[Of Plaintiff by immediate supervisor:] Steve's limits are whatever he wants them to be. He is highly motivated and displays an exceptional understanding of safety issues and how they relate to the "big picture"—many safety people lose sight of this. His organizational skills are outstanding and this computer knowledge will greatly assist him in his future endeavors. I highly recommend him without reservation.

[Of Krah by immediate supervisor:] Mr. Krah is cooperative, courteous and professional. He has demonstrated the ability to be flexible in meeting the challenges of the Injury Compensation Unit and is an asset in achieving the goals of the unit. Although he has very limited experience in the field of safety, he does have enthusiasm and the ability to quickly grasp the concepts of new programs.

[Of Krah by next higher-level manager:] Mr. Krah is an eager, aggressive employee, who has been a valued asset to the MSC Injury Compensation Program. He has actively demonstrated a favorable performance in some of the requirements of this position, in the Injury Compensation area. I believe that Pete has the potential to be successful, if selected, however the practical hands on experience of the posi-

tion has been minimal. I must recommend Pete with reservations at this time.

(Plaintiff's Exhibit 2 at 6; Exhibit 3 at 6.)

On the basis of these evaluations, a jury could find that Plaintiff's application was stronger than Krah's with respect to management qualifications. Krah's supervisor stated that she had not observed him exhibit the skills identified in requirement numbers 6 and 8, and she did not comment on "participative management" because Krah failed to include it on his 991 form. With respect to requirement number 9, which concerns oral and written communication skills, Krah's supervisor remarked that although he possesses strong verbal abilities he is a less able writer. Thus, of six requirements relating to management skills, Krah received no evaluation in three and a partly negative rating in one.

In contrast, Plaintiff received extremely positive remarks on all six management related criteria. Indeed, whereas Krah is recommended for the management position "with reservation," Plaintiff is recommended "without reservation." Accordingly, the court believes that a jury could conclude that the evaluations cast doubt on Defendant's claim that the employment decision resulted from apprehension about Plaintiff's management skills. The court need not rely on the evaluations alone, however, because Plaintiff has submitted additional evidence which discredits this reason for the decision.

### b. Bazylewicz's Alleged Failure To Consult With Other Supervisors

Plaintiff's second attack on this proffered reason is that Bazylewicz did not contact any of the references listed on Plaintiff's or Krah's 991 forms. Plaintiff and Krah each listed three references specifically in connection with managerial qualifications.[2] (Plaintiff's Exhibit 2 at 4–5; Exhibit 3 at 4–5.) Furthermore, Plaintiff has introduced testimony indicating that Bazylewicz did not communicate with Krah's then-current supervisors (McFall Dep. at 19; Snyder Dep. at 12–14), and he asserts that Bazylewicz likewise neglected to contact his own then-current supervisors. Bazylewicz does not contest that he spoke only with Bland regarding Plaintiff's candidacy, and he does not claim to have contacted anyone about Krah's qualifications.

On the basis of the parties' submissions, a jury could find that Bazylewicz failed to consult the numerous available sources of information on Plaintiff's and Krah's qualifications, and management skills in particular. Such a finding would constitute additional evidence from which a jury could doubt Defendant's claim that the employment decision was based on a concern about Plaintiff's managerial competence.

### c. Plaintiff's Performance In Baltimore

Finally, Plaintiff contends that the statement attributed to Bland is false. Plaintiff submits evidence intended to demonstrate that: (1) when he started work in Baltimore he inherited a backlog of employee medical bills, not injury compensation claims; (2) he eliminated this backlog within three weeks; and (3) he received a favorable performance evaluation for his service in Baltimore.

The most significant piece of evidence submitted by Plaintiff in connection with these claims is his annual performance evaluation for the period from approximately March 1989 to March 1990. Plaintiff was still working as Injury Compensation Supervisor in Baltimore during roughly the first half of that year, and he was employed in Lancaster, Pennsylvania during the remainder. In the evaluation, Plaintiff's supervisor in Lancaster rated him as a "very good supervisor" based partly upon "his very fine record in his previous position as Supervisor, Injury Compensation in Baltimore, MD." (Plaintiff's Exhibit 9 at 9.)

Defendant maintains that Plaintiff's challenge to the accuracy of the alleged Bland statement is irrelevant to the issue of pretext, which ultimately turns on Bazylewicz's intent at the time of the employment decision. Defendant cites *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir.1995), where the Third Circuit, interpreting *Billet v. CIGNA Corp.*, 940 F.2d 812 (3d Cir.1991), stated that "the inquiry into pretext centers

---

**2.** The 991 requests a reference with respect to each job requirement listed.

upon the employer's beliefs and not the employee's own perceptions." However, immediately following the general proposition just quoted, *Sempier* amplified the rule as follows:

> Nonetheless, *Billet* does not stand for the proposition that the employee's belief that his performance was satisfactory is never relevant. *Billet* concluded that the employee's assertions of his own good performance were insufficient to prevent summary judgment where the employer produced performance reviews and other documentary evidence of misconduct and insubordination that demonstrated poor performance.
>
> Where, as here, [the plaintiff] asserts not only that he performed well but that he never received any unfavorable criticism that his performance was poor or inadequate, the jury could conclude that [the employer's] failure to fault [the plaintiff's] performance for the twenty years prior to the negotiations leading to his discharge makes suspect its *post hoc* assertion of poor performance. This is especially true when [the employer] has failed to produce any other evidence of poor performance or make specific allegations of [the plaintiff's] deficiencies.

*Sempier*, 45 F.3d at 731 (citation omitted).

Here, on the question of Plaintiff's work in Baltimore, Defendant relies only upon Bazylewicz's general assertions while Plaintiff has produced documentary evidence supporting his claim of good performance. Under the rule of *Sempier* and *Billet*, the court finds that Plaintiff's evidence may be legitimately viewed by a jury as weakening the plausibility of Bazylewicz's alleged reliance on Bland's statement.

Viewed in the light most favorable to Plaintiff, the record suggests that: (1) Plaintiff's 991 form exhibits managerial qualifications superior to Krah's; (2) Bazylewicz failed to contact references, other than Bland, in regard to either Plaintiff or Krah despite their identification of numerous references on management qualifications; and (3) the statement attributed to Bland is of questionable accuracy. Furthermore, Defendant relies overwhelmingly on Bazylewicz's affidavit while Plaintiff introduces considerable documentary evidence to refute it, giving rise to a credibility issue which, in itself, may be sufficient to preclude summary judgment. *See Barber*, 68 F.3d at 699–700; *Chipollini*, 814 F.2d at 901. In view of the forgoing, the court finds that Plaintiff has introduced evidence from which a reasonable jury could conclude that Bazylewicz's alleged concern about Plaintiff's management skills is not worthy of credence.

### 3. *Bazylewicz's Supervision Of Krah*

Finally, Defendant proffers as a justification for the employment decision the fact that Bazylewicz supervised Krah on "several safety related projects" and found his performance "exemplary." (Bazylewicz Dec. at ¶ 6.) A bare assertion such as this is insufficient to carry the employer's burden at summary judgment, particularly in light of all the countervailing evidence offered by Plaintiff.

### D. *Evidence Relating Directly To Age*

Both parties have argued that the court should consider certain evidence relating directly to age. Defendant, again relying upon Bazylewicz's declaration, contends that Bazylewicz's alleged history of promoting older employees demonstrates that he is not biased against such persons. Bazylewicz avers:

> Over the two years immediately prior to selecting Mr. Krah for the position at issue, I made 10 promotion selections. Of those, six of the individuals I selected were 41 years old or older, and five of them were 49 years old or older. In fact, the most recent person I had promoted to the position of Manager, Safety and Health in the two years immediately prior to my decision not to select Mr. Gosnell to the position at issue was 67 years old at the time I chose her.

(Bazylewicz Dec. at ¶ 7.) Conversely, Plaintiff contends that Bazylewicz manifested a bias against older workers by remarking that one interviewee for the position was an E.A.S.–21 who "want[ed] to come to Harrisburg and vegetate in the safety position until he retires." (Gosnell Dep. at 49.)

As stated above, the Third Circuit has held that an ADEA plaintiff may survive a motion for summary judgment by presenting direct or indirect evidence which *either* (1) indicates

"that discrimination was more likely than not a motivating or determining cause of the adverse employment action," or (2) discredits the employer's proffered reason. *Fuentes*, 32 F.3d at 764. The Circuit has consistently evaluated evidence which discredits an employer's proffered reason separately from evidence specifically relating to the protected class, which it subsumes under the analysis of whether discrimination is more likely than not a cause of the decision. *See, e.g., Fuentes v. Perskie*, 32 F.3d 759 (3d Cir.1994); *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509 (3d Cir.1992). Though the Circuit has not expressly prohibited weighing evidence which relates directly to the protected class when considering the credibility of an employer's proffered reason, its practice implicitly suggests that courts ought not do so.

██ In any event, if the court did weigh such evidence in its overall view of the plausibility of Defendant's proffered reasons, Defendant's motion would still be denied. While it is true that an employer's pattern of hiring may be relevant to the issue of pretext, such relevance can only be determined in light of "the qualified applicant pool or the flow of qualified candidates over a relevant time period." *Ezold*, 983 F.2d 509 (citations omitted). Defendant has introduced no such evidence and therefore the relevance of Bazylewicz's assertions about his past hiring practices cannot be determined.[3]

## IV. *Conclusion*

The foregoing discussion amply demonstrates that Defendant is not entitled to summary judgment. In light of Plaintiff's substantial evidence contradicting the reasons proffered by Defendant for his employment decision, and the numerous credibility issues, the court concludes that this case requires disposition by a jury. Accordingly, Defendant's motion for summary judgment will be denied.

An appropriate order will be issued.

---

**3.** The court need not consider the relevance of Bazylewicz's alleged "vegetation" statement since, even without it, Defendant's motion must be denied.