Rachel WHITE, Plaintiff,

v.

**CAMDEN CITY BOARD OF EDUCATION, Defendant.**

No. CIV.A. 00–807.

United States District Court,
D. New Jersey.

March 20, 2003.

F. Michael Daily, Jr., F. Michael Daily, Jr., LLC, Westmont, NJ, for Plaintiff, Rachel White.

Thomas M. Toman, Jr., Karen A. Murray, Patricia Reddy-Parkinson, Murray & Murray, Little Silver, NJ, for Defendant, Camden County Board of Education.

## OPINION

ORLOFSKY, District Judge.

Some of the most poignant lessons that we learn as children come from cautionary fables, such as "Goldilocks and the Three Bears" and "Little Red Riding Hood." This case presents a cautionary tale to unwary attorneys and might be aptly titled, "The Client Who Had No Claim."

Plaintiff, Rachel White ("White"), sued Defendant, Camden County Board of Education ("Camden BOE"), for alleged age discrimination in violation of the Age Discrimination in Employment Act, or "ADEA," 29 U.S.C. § 621, *et seq.* Camden BOE moves for summary judgment, pursuant to Fed.R.Civ.P. 56, and for sanctions against F. Michael Daily, White's attorney, pursuant to Fed.R.Civ.P. 11. For the reasons set forth below, the motion for summary judgment shall be granted, and the motion for Rule 11 sanctions shall be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

White first began working as a substitute teacher for the Camden BOE in 1982. *See* Aff. of Rachel White, 9/6/02 ("White Aff."), ¶ 3. On May 15, 1992, White received a Bachelor of Arts degree from Glassboro State College. *See* White Aff., Ex. A. White did not obtain a teaching certification at that time because she had not completed her student teaching requirement, *see* Dep. of Rachel White, 6/6/02 ("White Dep."), 26:11–19, and because of her low grade point average ("GPA"), *see* Certif. of Thomas Toman, Esq., 7/30/02 ("Toman Certif."), Ex. B. Despite having a GPA below the minimum 2.50 required by the College's School of Education, White received a variance and was permitted to graduate, but her transcript carried the explanation: "This graduate did not complete the requirements of a Glassboro State College approved teacher certification program." *Id.;* White Dep. 28:13–24.

In June 1992, after obtaining her degree, White applied for a position as a permanent teacher with the Camden BOE. *See* White Aff., Ex. B. The New Jersey Department of Education sent White an evaluation, in which it outlined additional

academic requirements that White needed to complete in order to be certified as a teacher for the handicapped. *Id.*, Ex. D. Specifically, White was to complete twelve additional credits of instruction in "education of the handicapped." *Id.* White never completed these additional credits. *See* White Dep. 50:3–8. To date, White has not fulfilled the requirements for teaching certification. *Id.*, 49:6 to 50:8.

In a subsequent application with the Camden City Public School system, dated February 1, 1993, White indicated multiple position preferences, including elementary kindergarten teacher, and teacher of the handicapped for pre-kindergarten, kindergarten, and special education classes. *Id.*, Ex. C. In the "Teaching Certificates" section of that application, White did not list any teaching certificates. *Id.* She did not receive a position.

On March 14, 1994, White filed another application for employment with the Camden City Public School system. *See* White Aff., Ex. E. This time, she indicated position preferences of pre-kindergarten and kindergarten elementary teacher, but did not indicate a preference as a teacher of the handicapped. *Id.* On the same application, White wrote that she was eligible for certification upon completion of nineteen additional credits of special education. *Id.* The Camden BOE followed up by sending White two notices requesting copies of her teaching certificates when they became available. *See* Toman Certif., Exs. D & E.

Additionally, in a letter dated November 21, 1995, the Camden BOE's Director of Personnel Services, Ms. D. Parthenia Cogdell, brought White's application to the attention of Special Education Supervisors for their consideration, along with other available applicants, "[s]hould an opening become available and the need to fill the position requesting an applicant with an Emergency Teacher of the Handicapped Certificate." Aff. of F. Michael Daily, Jr.,

9/6/02 ("Daily Aff."), Ex. C. An emergency certificate is "a substandard one-year certificate issued only in the field of educational services, teacher of the handicapped, teacher of the blind and partially sighted, and teacher of the deaf and hard of hearing." N.J. Admin. Code § 6:11–4.3(a) (West 2003). Such certificates are issued only "on application of a public school district, submitted after August 1, in which the district board of education declares its inability due to unforeseen shortages or other extenuating circumstances to locate a suitable certified teacher." *Id.* § 6:11–4.3(b).

None of White's applications for a permanent teaching position were successful. *See* Daily Aff., Ex. B, Interrog. Resp. No. 9. Although White was never hired by the Camden BOE, she has been periodically employed as a *per diem* substitute teacher. *Id.*, Interrog. Resp. No. 2.

On October 24, 1994, White filed a verified complaint with the New Jersey Division on Civil Rights, Department of Law & Public Safety, alleging discrimination on the basis of age. *See* Toman Certif., Ex. F. After conducting an investigation, the Division made the following findings:

(1) Respondent provided a legitimate nondiscriminatory reason for refusing to hire Complainant which was supported by the investigation and not refuted by Complainant. Respondent's position was affirmed with respect to the fact that Complainant did not supply the necessary documentation to complete her application which included proof of certification to teach elementary education, the position which Complainant sought.

(2) The investigation revealed that younger applicants who were hired had the necessary certifications in order to qualify for the positions.

(3) There was no evidence obtained during the investigation that would support Complainant's claim that her competitors were held to less rigid standards for employment, than was she.

(4) There was no other evidence, information or testimony obtained during the investigation to support a claim that Complainant was denied a position because of her age.

*Id.*, Ex. G, at 6. The Division found that there was "not probable cause to credit the allegations of the complaint" and closed White's file on June 29, 1998. *Id.* The United States Equal Employment Opportunity Commission ("EEOC"), likewise, dismissed White's allegations of discrimination and issued her a right to sue letter on December 10, 1999. White filed her Complaint in this Court on February 24, 2000.

This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (2003). I have considered the submissions of the parties and decided these motions on the papers without oral argument pursuant to Fed.R.Civ.P. 78.

## II. MOTION FOR SUMMARY JUDGMENT

### A. THE LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

The legal standard governing summary judgment is wellsettled. Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Consol. Rail Corp. ("Conrail"),* 297 F.3d 242, 247 (3d Cir. 2002). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Conrail,* 297 F.3d at 247 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is material if it bears on an essential element of the plaintiff's claim. *Abraham v. Raso,* 183 F.3d 279, 287 (3d Cir.1999) *(citing Anderson,* 477 U.S. at 248–251, 106 S.Ct. 2505).

Thus, to survive a motion for summary judgment, the party contesting the motion must demonstrate a dispute over facts that might affect the outcome of the suit. *Groman v. Township of Manalapan,* 47 F.3d 628, 633 (3d Cir.1995) *(citing Anderson,* 477 U.S. at 250–52, 106 S.Ct. 2505). When considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. In evaluating the evidence, the District Court must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." *Curley v. Klem,* 298 F.3d 271, 276–77 (3d Cir.2002) (quoting *Bartnicki v. Vopper,* 200 F.3d 109, 114 (3d Cir.1999)); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Notwithstanding this deference towards the non-movant, "[t]he mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient" to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

Summary judgment is proper if, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Conrail,* 297 F.3d at 247 (citing *Celotex Corp. v. Catrett,* 477 U.S.

317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

After one party has filed a properly supported summary judgment motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor. *Groman,* 47 F.3d at 633 (*citing Anderson,* 477 U.S. at 250–52, 106 S.Ct. 2505). Moreover, "[w]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).[1] "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." *Id.*

## B. DISCRIMINATION CLAIMS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT

The Age Discrimination in Employment Act, or "ADEA," 29 U.S.C. § 621, *et seq.,* makes it illegal for an employer to refuse to hire an individual because of such individual's age. *Id.* § 623(a)(1) (2003). Discrimination under the ADEA may be proven by either "direct" or "indirect" evidence. *See Fakete v. Aetna, Inc.,* 308 F.3d 335, 338 (3d Cir.2002).

Proving discrimination using direct evidence presents a "high hurdle," and requires a plaintiff to present evidence that decision-makers placed substantial negative reliance on an illegitimate criterion, such as age, in reaching their decision. *See Conrail, supra,* 297 F.3d at 248 (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268

(1989)). The evidence must reveal a sufficient discriminatory animus making it unnecessary to rely on any presumption from the *prima facie* case to shift the burden of production. *Conrail,* 297 F.3d at 248. Such direct evidence leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it when he or she made the challenged employment decision. *See Fakete,* 308 F.3d at 338–39. Here, White has not supported her allegations of discrimination with direct evidence. Instead, White relies on indirect evidence of age discrimination in support of her claim.

▪ In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court articulated a three-step burdenshifting framework for analysis of discrimination claims using indirect evidence. The United States Court of Appeals for the Third Circuit has adopted a modified version of the *McDonnell Douglas* framework for use in ADEA cases. *See Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir.1997) (en banc). First, the plaintiff must produce evidence that is sufficient to convince a reasonable factfinder to find all the elements of a *prima facie* case. *Id.* (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). If the plaintiff sets forth a *prima facie* case of age discrimination, the burden of production shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason for the discharge. *Keller,* 130 F.3d at 1108. If the defendant cannot satisfy this burden of

---

**1.** Local Civil Rule 56.1 of this Court also requires that on motions for summary judgment each side must submit statements identifying material facts as to which there does or does not exist a genuine issue. "[F]acts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted." *Hill v. Algor,* 85 F.Supp.2d 391, 408 n. 26 (D.N.J.2000).

production, judgment must be entered for the plaintiff. *Id.* If the defendant does satisfy this burden, then step three of the analysis is reached. *Id.* Under this last stage, the plaintiff may survive summary judgment by submitting evidence from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Id.* (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994)).

## C. WHETHER PLAINTIFF CAN ESTABLISH A *PRIMA FACIE* CASE OF AGE DISCRIMINATION

■ The very first step of the *McDonnell Douglas* analysis requires a plaintiff to establish a *prima facie* case of discrimination. *See Keller*, 130 F.3d at 1108. When a plaintiff alleges age discrimination in a failure-to-hire context, the *prima facie* case requires proof:

(1) that she belongs to the protected class;

(2) that she applied for and was qualified for the job;

(3) that despite her qualifications, she was rejected; and

(4) that the employer either ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination or continued to seek applicants from among those having plaintiff's qualifications.

*Barber v. CSX Distribution Servs.*, 68 F.3d 694, 698 (3d Cir.1995).

■ There is no dispute that White is a member of the protected class and satisfies the first prong of the *prima facie* case.[2] The crux of this dispute lies at the

second prong—the parties dispute whether White applied for and was qualified for a position as a permanent teacher with the Camden Board of Education.

Despite her failure to obtain a valid teaching certification, White believes that she was, nonetheless, qualified for a teaching appointment under an emergency certification. *See* White Aff. ¶ 16. White also claims that other, younger applicants were appointed as teachers under emergency certifications. *Id.* For example, White points to Tasha Mitchell, a younger applicant who successfully applied for a permanent position with the Camden BOE. *See* White Aff. ¶ 13, Ex. F. Mitchell did not indicate any teaching preferences in her application with the Camden BOE, but, unlike White, Mitchell held a valid New Jersey teaching certification as an elementary school teacher. *Id.* Thus, White's reliance on the Camden BOE's hiring of Mitchell is misplaced. There is no discrimination where an employer hires a qualified applicant over an unqualified applicant.

In further support of her claim, White also asks this Court to consider copies of meeting minutes that she personally obtained at the offices of the Board of Education. *See* White Aff., Ex. G. These minutes contain lists of the names of teachers, their salaries, positions held, and teaching certifications. Notably absent from these lists are the ages of any teachers. Also lacking are minutes from 1993 or 1994, the two years for which White submitted copies of her employment applications. In short, the Board of Education minutes lend absolutely no support to White's claim of age discrimination.

After reviewing the summary judgment record in a light most favorable to White, *see Curley v. Klem*, 298 F.3d at 276–77, I

2. The ADEA prohibits age discrimination in employment against individuals over the age of forty. *See* 29 U.S.C. § 623(a)(1). White was born in 1940. *See* Aff. of Rachel White, 9/6/02, ¶ 2.

find that no genuine issue of material fact exists in this case. White was not qualified for the positions she sought because she lacked teaching certification. There is no evidence whatsoever in the summary judgment record that age discrimination played any role in the Camden BOE's hiring decisions. To the contrary, the Camden BOE supported White's application and informed her of the steps she needed to take in order to obtain proper teaching certification, but White failed to satisfy those requirements. Instead, she filed this lawsuit. My review of the summary judgment record is consistent with the findings of the New Jersey Division of Civil Rights and the EEOC, both of which found that White's allegations of discrimination lacked merit. Thus, I shall grant summary judgment in favor of the Camden BOE.

### III. MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

#### A. THE LEGAL STANDARD GOVERNING MOTIONS FOR RULE 11 SANCTIONS

Fed.R.Civ.P. 11 is "aimed at curbing abuses of the judicial system." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The rule provides, in relevant part:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument

for the extension, modification, or reversal of existing law or the establishment of new law;

(3) *the allegations and other factual contentions have evidentiary support or,* if specifically so identified, *are likely to have evidentiary support* after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Civ.P. 11(b) (West 2003) (emphasis added). If, after a party has been given notice and a reasonable opportunity to respond, the Court determines that any of these provisions has been violated, the Court may impose an appropriate sanction upon the attorney, law firm, or party. *See* Fed.R.Civ.P. 11(c).

The United States Supreme Court has explained that "[t]he essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit. A signature sends a message to the district court that this document is to be taken seriously." *Bus. Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 546, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991). Sanctions are warranted when a reasonable inquiry would have disclosed that a claim or motion is "patently unmeritorious or frivolous." *Mendez v. Draham*, 182 F.Supp.2d 430, 433 (D.N.J.2002) (Orlofsky, J.) (quoting *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir.1988)). Any sanction imposed under Rule 11 "should be calibrated to the least severe level necessary to serve the deterrent purpose of the Rule," *Zuk v. Eastern Pa. Psychiatric Inst. of the Med. College of Pa.*, 103 F.3d 294, 301 (3d Cir.1996) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1336 (2d ed. Supp.1996)),

and may include monetary sanctions, reprimands, orders to undergo continuing legal education, and referrals to disciplinary authorities, *see Zuk*, 103 F.3d at 301.

## B. WHETHER SANCTIONS ARE WARRANTED IN THIS CASE

As I have explained above, White's age discrimination suit against the Camden BOE was meritless. The question presented is whether F. Michael Daily, Jr., Esq. ("Daily"), White's attorney, should be sanctioned under Rule 11 for pursuing a lawsuit that lacked basic evidentiary support. The weakness of White's lawsuit was glaringly evident in this case because her claims had already been investigated and reviewed by the EEOC and the New Jersey Division on Civil Rights, which also issued written findings of its investigation. A cursory review of these findings would have revealed that White was not qualified for the employment that she sought because she lacked proper teaching certification.

Although I find that Daily failed to investigate adequately the basis of White's claims prior to providing her with legal representation, I decline to impose Rule 11 sanctions in this case. First, White originally filed her Complaint *pro se*. Daily, at the time a member of the law firm of Quinlan, Dunne & Daily, P.A., appeared as White's counsel only later in this action, to oppose the vacatur of a default judgment that had already been entered against the Camden BOE. This Court, however, granted the Camden BOE's motion to vacate default judgment, *see* Order, *White v. Camden Bd., of Educ.*, Civ. A. No. 00–807(SMO) (D.N.J. Nov. 2, 2001), and discovery proceeded.

At the close of discovery, Daily realized what the New Jersey Division on Civil Rights and EEOC had already determined—"it would be difficult to establish a core of plaintiff's claim." *See* Order, *White v. Camden Bd., of Educ.*, Civ. A. No. 00–807(SMO)(JBR), at 2 (D.N.J. Aug. 16, 2002). Thus, Daily attempted to settle the case, but White rejected the Camden BOE's settlement offer. Perhaps in recognition of his client's unreasonable litigiousness, Daily filed a motion to withdraw as White's counsel, which United States Magistrate Judge Joel B. Rosen denied in an Order dated August 16, 2002. *See id.* Under Local Civil Rule 102.1 of this Court, Judge Rosen concluded, with good reason, that Daily's withdrawal at that stage of the litigation would have substantially harmed the administration of justice and delayed the resolution of the case. *See* Order of Aug. 16, 2002, at 2. After Daily chose to represent White without first thoroughly investigating the basis of her age discrimination claim, her case became his burden to bear.

A sanction under Rule 11 in this case is not appropriate because Daily has already suffered the pains of accepting a case and representing a client without adequately investigating the evidence supporting the allegations. When he finally realized that his client's claims were without merit, he moved to withdraw, only to have that motion denied by the Court. When the Camden BOE moved for summary judgment, Daily felt duty-bound to oppose the motion. Although Daily's filing in opposition to the motion may have been a technical violation of Rule 11, it is clear to this Court that Daily was merely practicing selfdefense. He had sought to withdraw, and his client had already expressed displeasure with his performance.[3] In the future, Mr. Daily should exercise more selectivity in the cases he files in this Court. The most difficult task a lawyer must perform

---

3. White submitted a short statement to the Court indicating her displeasure with Daily's representation. *See* Order of Aug. 12, 2002, at 3.

is knowing when to say "NO" to a client. The attorney-client relationship, however, is not a suicide pact. In this case, Daily chose the path of least resistance. Although the question is a close one, under the circumstances of this case, I shall deny the motion for Rule 11 sanctions.

## IV. CONCLUSION

For the reasons set forth above, I shall grant the motion of Defendant, Camden Board of Education, for summary judgment. I shall, however, deny the Defendant's motion for Rule 11 sanctions against F. Michael Daily, Jr., Esq. The Court shall enter an appropriate form of Order.