

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-16-1995

# Barber v CSX Distribution

Precedential or Non-Precedential:

Docket 94-3604

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Barber v CSX Distribution" (1995). *1995 Decisions.* Paper 268.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/268

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

3551

58102

109153     .
160204     .

Nos. 94-3604 and 94-3653


SIMON A. BARBER
                Appellant No. 94-3604
          v.

CSX DISTRIBUTION SERVICES,
a UNIT OF CSX TRANSPORTATION, INC,;
CSX TRANSPORTATION, INC.
                Appellants No. 94-3653


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 92-cv-01241)


Argued July 28, 1995

Before: NYGAARD and McKEE, Circuit Judges and
FULLAM, District Judge[2]

(Opinion filed October 16, 1995)


THEODORE J. KUKUNAS, ESQUIRE (ARGUED)
419 Frick Building
437 Grant Street
Pittsburgh, PA  15219

     Attorney for Simon A. Barber

---

[2]Honorable John P. Fullam, Senior United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.


1

FREDERICK W. BODE, III, ESQUIRE (ARGUED)
Dickie, McCamey & Chilcote
Two PPG Place, Suite 400
Pittsburgh, PA  15222-5402

        Attorney for CSX Distribution Services
        and CSX Transportation, Inc.

OPINION OF THE COURT

McKEE, Circuit Judge.

        Simon A. Barber appeals from the district court's entry of judgment in favor of his employer, CSX Transportation, Inc., following a jury verdict in favor of Barber. Barber sued under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (1988) ("ADEA"), alleging discriminatory failure to promote and retaliation for his assertion of his discrimination claim. Although we agree that defendants[3] were entitled to judgment as a matter of law on Barber's retaliation claim, we hold that the district court improperly overturned the jury's finding that defendants' failure to promote Barber was in violation of the ADEA.  Therefore, we will reverse in part and remand to the district court for proceedings consistent with this opinion.

## I.   BACKGROUND

        Simon Barber has been employed by CSX Transportation or its predecessors for the last thirty-eight years.  During his tenure with CSX, Barber has served in various capacities of increasing responsibility and has received numerous merit or performance

---

[3]     Although in substance Barber's claims appear to involve only his employer as the sole defendant, hereinafter we refer to "defendants" to be consistent with the district court's opinion, the language in Barber's brief and the caption in this matter.

salary increases and letters of commendation.  In February of 1987, Barber took the position of Chief Clerk essentially serving as the office manager in defendants' Pittsburgh sales office. The position of Territorial Account Executive became available in that office in March of 1990, and was posted on the company wide computer system.  The Territorial Account Executive was responsible for the design, marketing and sale of CSX services.

Eight applications were submitted for the Territorial Account Executive position.  CSX's Human Resources Department screened the applications and determined that only four of the applicants met the minimum qualifications.  Those four were:

(1)  Scott Delasandro, age 37 -- one year of railroad experience and no sales experience.

(2)  Kathy Ball, age 44 -- twenty years of railroad experience, fifteen of which were in accounting and five of which were in telemarketing.

(3)  Andrew Kelly, age 53 -- thirty-four years of railroad experience including his position as Sales Representative in the Pittsburgh sales office at the time he applied for the Territorial Account Executive position.

(4)  Plaintiff, Simon Barber, then age 52 -- thirty-four years of railroad experience, including fourteen years of railroad sales experience and seven years of customer service experience.

Robert Edmonds, Director of Sales in the Pittsburgh sales office, was Barber's supervisor at the time, and was responsible for selecting the Territorial Account Executive whom Edmonds would also supervise.  Edmonds interviewed the two younger applicants, Scott Delasandro and Kathy Ball, both of whom worked in the Baltimore regional office.  Although he did not interview Andrew Kelly, Edmonds informally discussed the position with

3

Kelly after Kelly submitted his application. However, Kelly withdrew his application after learning the salary. Edmonds did not interview or discuss the position with Barber.

Even though Edmonds did not formally interview either Kelly or Barber, Edmonds filled out an "Interview Report Form" for both of those applicants as well as for the two applicants whom he did interview. That interview report, dated April 5, 1990, stated that Barber was "qualified but [did] not possess the credentials of Kathy Ball" who was selected. Interestingly, Kathy Ball's interview report was dated May 2, 1990, nearly a month <u>after</u> she was actually selected.

On May 23, 1990, Barber wrote a letter to defendants' Human Resources Department questioning Edmonds' decision to award the position to Ball whom Barber felt was less experienced and less qualified than he was. Specifically, Barber's letter stated:

> I recently submitted a Job Application Form for the position of Territorial Account Executive (Job Vacancy No. 199) at Pittsburgh, PA.
>
> Mr. Robert W. Edmonds, Jr., Director- Sales, Pittsburgh, has informed me the position has been awarded to Ms. Kathy Ball from Telemarketing at Baltimore. In view of my 21 years of experience in this field (14 years direct sales and 7 years customer service), I am quite puzzled as to why the position was awarded to a less qualified individual.
>
> I would greatly appreciate your response as to why I was not awarded this job.

App. at 363. Shortly thereafter, Edmonds called Barber into his office and expressed disappointment over that complaint. On

4

November 28, 1990, Barber received notification that, as of December 5, 1990, his position as Chief Clerk was being eliminated as a result of a company wide reduction in force. Edmonds made the decision to eliminate Barber's position of Chief Clerk after receiving a mandate from management to eliminate one of three clerical positions in the Pittsburgh sales office.[4]

On May 13, 1992, Barber filed this action in the United States District Court for the Western District of Pennsylvania. Barber's complaint alleged violations of the ADEA, gender discrimination under the Civil Rights Act of 1964, 42 U.S.C. §2000 et seq. (1988) ("Title VII"), and unlawful retaliation under both the ADEA and Title VII. The resulting trial was bifurcated and issues of liability were severed from any determination of damages. Barber's age discrimination claims were tried to a jury while his Title VII sex discrimination and retaliation claims were tried to the court. The court found in favor of CSX on Barber's Title VII claims and Barber does not appeal that ruling. However, the jury found that CSX violated the ADEA by failing to promote Barber because of age discrimination and by retaliating against him when he voiced his displeasure at not being promoted. Following trial, the court granted a defense motion for judgment as a matter of law on both the age discrimination and retaliation claims, notwithstanding the jury's

_____

[4] The three clerical positions in the Pittsburgh sales office consisted of two Secretary-Typists and one Chief Clerk.

special verdicts in favor of Barber.  Barber now appeals that ruling.[5]

## II. DISCUSSION

We exercise plenary review of the district court's entry of an order granting CSX's motion for judgment as a matter of law. See Intermilo, Inc. v. I.P. Enterprises, Inc., 19 F.3d 890, 892 (3d Cir. 1994); Bhaya v. Westinghouse Elec. Corp., 832 F.2d 258, 259 (3d Cir. 1987), cert. denied, 488 U.S. 1004 (1989) (motion for judgment notwithstanding the verdict).  Therefore, we must apply the same standard to this record as the district court. See Berndt v. Kaiser Aluminum & Chem. Sales, Inc., 789 F.2d 253 (3d Cir. 1986).  We afford de novo review to the district court's conclusions of law, but review factual findings to "determine whether the evidence and justifiable inferences most favorable to [Barber] afford any rational basis for the verdict."  Bhaya, 832 F.2d at 259.

### A.  AGE DISCRIMINATION CLAIM

The ADEA prohibits age discrimination in employment against an individual over age 40.  29 U.S.C. § 623 (a)(1).  Because the prohibition against age discrimination contained in the ADEA is similar in text, tone, and purpose to the prohibition against discrimination contained in Title VII, courts routinely look to

---

[5]   In their cross-appeal, defendants seek review of the district court's conditional ruling denying their motion for a new trial under Rule 59.  Because we are affirming the district court's judgment as a matter of law in favor of the defendants on Barber's retaliation claim, we need not address the issues raised in the cross appeal.

law developed under Title VII to guide an inquiry under the ADEA. See, e.g., Maxfield v. Sinclair Int'l, 766 F.2d 788 (3d Cir. 1985), cert. denied, 474 U.S. 1057 (1986).  Thus, we follow the evidentiary framework first set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), subsequently refined in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981), and recently clarified in St. Mary's Honor Center v. Hicks, __ U.S. __, 113 S. Ct. 2742 (1993). In addition, Barber's failure to promote claim is analogous to a claim of failure to hire.  Thus, in order to make out a *prima facie* case, Barber must show "1) that he belongs to the protected class, 2) that he applied for and was qualified for the job, 3) that despite his qualifications he was rejected, and 4) that the employer either ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination or continued to seek applicants from among those having plaintiff's qualifications."  Fowle v. C & C Cola, 868 F.2d 59, 61 (3d Cir. 1989) (citations omitted).

Once a plaintiff establishes a *prima facie* case the law creates a presumption of unlawful discrimination, and the defendant employer must articulate a "legitimate nondiscriminatory explanation for the employer's adverse employment action."  Seman v. Coplay Cement Co., 26 F.3d 428, 432 (3d Cir. 1994).  If the employer puts forth a legitimate business explanation, "then the presumption of discriminatory intent created by the employee's *prima facie* case is rebutted and the presumption simply `drops out of the picture.'"  Id. (quoting

7

Hicks, __ U.S. at __, 113 S. Ct. at 2749).  The plaintiff then has an opportunity to show that the reasons proffered by the employer were a pretext for what, in reality, was a discriminatory motivation.  See id.  Of course, the ultimate burden to prove discrimination on the basis of age (burden of persuasion) remains with the plaintiff at all times.  Hicks, U.S. at __, 113 S. Ct. at 2749;  Burdine, 450 U.S. at 256; Bhaya, 832 F.2d at 260.

The district court found that Barber established a *prima facie* case from which an inference of age discrimination could be drawn.  Barber v. CSX Distribution Servs., No. 92-1241, slip op. at 2 (W.D. Pa. Oct. 6, 1994).  Defendants contest that ruling arguing that Barber failed to establish the fourth element of a *prima facie* case -- that the employer filled the position with someone sufficiently younger to permit an inference of age discrimination.  We agree with the district court's conclusion that Barber established a *prima facie* case.  It is undisputed that Barber was 52 years of age when he was rejected for the position of Territorial Account Executive, and the successful candidate was 44.  Defendants, without citation to supporting authority, assert that this "eight year age difference is not sufficient to establish the fourth element of a prima face case." Brief of Appellees/Cross Appellants at 25.

A plaintiff under the ADEA need not show that the successful candidate was someone who was not in the protected class, i.e. below age 40.  All that need be shown is that the beneficiary of the alleged discrimination is "sufficiently younger" to permit an

8

inference of age discrimination.  Maxfield, 766 F.2d at 792 ("Courts that have addressed this issue squarely have universally permitted a *prima facie* case to be shown through proof that the favored person was younger than plaintiff.  All have held that the replacement need not be younger than 40, the age at which ADEA protection begins.") (collecting cases).  There is no magical formula to measure a particular age gap and determine if it is sufficiently wide to give rise to an inference of discrimination, however, case law assists our inquiry.  In Healy v. New York Life Ins. Co., 860 F.2d 1209 (3d Cir. 1988), we concluded that nine years difference was sufficient to establish a *prima facie* case of age discrimination even though the favorably treated employee was also within the protected class, id. at 1214.[6]  In Douglas v. Anderson, 656 F.2d 528 (9th Cir. 1981), the Court of Appeals for the Ninth Circuit held that five years difference, in addition to substantial evidence of plaintiff's qualifications for the position, was sufficient to establish a *prima facie* case of age discrimination, id. at 533.[7]

It is clear that here, the eight year difference between Barber and the successful candidate, Kathy Ball, could support a finding that Ball was "sufficiently younger" than Barber to permit an inference of age discrimination.  That difference,

---

[6]     In Healy, the employer ultimately prevailed because the employee was unable to show that the employer's proffered reason for the allegedly discriminatory treatment was a pretext for illegal discrimination.  Id. at 1220.

[7]     In Douglas, as in Healy, the employer ultimately prevailed because the nondiscriminatory justifications proffered for the employer's actions were credible.  Id. at 535.

together with the undisputed existence of the remaining elements of Barber's *prima facie* case, were clearly sufficient to shift the burden of production to the defendants and require them to articulate a legitimate, non-discriminatory motivation for their failure to promote Barber.  Thus, the district court properly ruled that Barber had established a *prima facie* case of age discrimination.

However, the district court erred in concluding that Barber did not demonstrate that defendants' proffered business reasons were pretextual.  Barber v. CSX Distribution Servs., No. 92-1241, slip op. at 3-4 (W.D. Pa. Oct. 6, 1994).  The district court was obligated to review the record before it and determine if the evidence and the inferences that reasonably arose from it provided "any rational basis for the verdict."  Bhaya, 832 F.2d at 259 (emphasis added).  In Bhaya (a case very similar to this one) we reversed the district court's entry of judgment for the defendant employer and remanded the case for reinstatement of the jury verdict finding age discrimination.  Here, as in Bhaya

> [t]he issue on this appeal is straightforward.  The jury has told us which explanation it believes, and we are bound by that finding if there is evidence of record to support it.  Our only inquiry is whether, taking the record as a whole and resolving all factual disputes in favor of the plaintiffs, the evidence and justifiable inferences therefrom reasonably support the plaintiffs' explanation.  We turn now to consider whether a reasonable juror could have concluded that the defendant intentionally discriminated against the plaintiffs because of their age.

Id. at 260.

10

The facts and reasonable inferences here clearly allow a reasonable juror to conclude that Barber's age was a motivating factor in his employer's refusal to promote him. Defendants maintain that Barber was not awarded the position because "Kathy Ball was the best candidate" for the job, and they cite several legitimate considerations that they argue factored into the determination. See Brief of Appellees/Cross Appellants at 11-12. That argument overlooks the procedural posture here. The jury has spoken. Although the district court may have found the legitimate explanations credible, the jury did not. That difference may well be nothing more than a different evaluation of the credibility of the various witnesses at trial. Nevertheless, this record does not allow the district judge to disregard the jury's determination of credibility and substitute it with his own.

Edmonds testified that he did not formally interview either of the two older candidates (Kelly or Barber) because he was familiar with their work as he had supervised both of them for nine months in the Pittsburgh sales office. Barber notes that Edmonds had an opportunity to evaluate Kelly's performance as a salesman, but that he (Barber) was a Chief Clerk, and Edmonds had no basis to evaluate his abilities in sales. Barber also argued that Kelly had an opportunity to informally discuss the position with Edmonds and eventually expressed his disinterest in the position after learning the proposed salary, whereas Barber was given no opportunity to discuss the position with Edmonds.

11

The district court, apparently discredited Barber's arguments. The court reasoned:

> It was undisputed, however, that . . . [Edmonds] was acquainted with plaintiff and the other older applicant because plaintiff and the other applicant had worked for the official in his department for a nine-month period preceding the time the employment decision was made. The applicant who was promoted, as well as the other younger applicant, on the other hand, were unknown to [Edmonds], and he explained his desire to interview them to learn more about their qualifications for the position.

Barber v. CSX Distribution Servs., No. 92-1241, slip op. at 3 (W.D. Pa. Oct. 6, 1994).

The jury was entitled to credit Barber's arguments as more credible than the contrary explanations of his employer. This is particularly true when we consider the "interview reports" that Edmonds completed. The district court's opinion inexplicably overlooks the fact that Edmonds completed these reports for all candidates even though he only interviewed two of them. The court also overlooks the fact that Barber's "interview report" dated April 5, 1990 refers to Ball as the candidate who had been selected for the job, but the jury could conclude from Ball's interview report that she had not been interviewed when Edmonds declared that she "had been" selected. The district court was not free to ignore this testimony nor the inferences that this record supports. "In crediting the defendants' explanation, the district court effectively reversed the requirement that in reviewing a jury verdict we are to draw all inferences in favor of the prevailing party." Bhaya, 832 F.2d at 262. "Evaluation

12

of witness credibility is the exclusive function of the jury, and where the only evidence of intent is oral testimony, a jury could always choose to discredit it." Id. See also Dreyer v. Arco Chem. Div. of Atl. Richfield, 801 F.2d 651, 655-56 (3d Cir. 1986), cert. denied, 480 U.S. 906 (1987).

The district court also stated that Barber had failed to persuade the court that defendants' explanation that it factored Barber's unwillingness to move into its decision was pretext. The district judge stated:

> In this regard, defendants offered uncontradicted evidence that the successful applicant was employed in the Baltimore area and would have to relocate in order to accept the position. Defendants also took the position that an employee's willingness to relocate is evidence of the employee's loyalty and commitment to the employer.

Barber v. CSX Distribution Servs., No. 92-1241, slip op. at 3 (W.D. Pa. Oct. 6, 1994). Although this testimony persuaded the court, it apparently did not persuade the jury. This is understandable because there was also testimony that the position that Barber sought did not require relocation. Accordingly, the record clearly supports the jury's rejection of this explanation. In fact, defendants concede that "Plaintiff properly states that willingness to relocate was not a job qualification." Brief for Appellees/Cross Appellants at 28.

Defendants maintain that the district court's entry of judgment as a matter of law is consistent with our decision in Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994). In Fuentes, we explained that a plaintiff satisfies the requisite quantum of

13

proof to rebut a defendant's stated legitimate business reason

when the plaintiff produces evidence which:

> (1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; <u>or</u>
>
> (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

<u>Id.</u> at 762 (emphasis added). Defendants place particular, if not

exclusive, emphasis on the first of these criteria, arguing that

Barber's rebuttal evidence must go to <u>each</u> of their proffered

legitimate business reasons. However, <u>Fuentes</u> also allows a

plaintiff to more generally submit evidence raising an inference

of discrimination. <u>Id.</u>

> <u>Hicks</u> teaches . . . that rejection of the employer's proffered nondiscriminatory reason will permit the trier of fact to infer the ultimate fact of intentional discrimination, so long as there is a finding of discrimination. In other words, `[t]he factfinder's disbelief of the reasons put forward by the [employer] . . . may, together with the elements of the [employee's] *prima facie* case, suffice to show intentional discrimination.'"

<u>Seman</u>, 26 F.3d at 433 (quoting <u>Hicks</u>, __ U.S. at __, 113 S. Ct.

at 2749 n.4) (citation and footnote omitted) (brackets in

original). Here, the record contained Defendants' inconsistent

interview techniques, the pre-dated and inaccurate "interview

report forms", and differing accounts of the relevance of Ball's

willingness to relocate, all of which could have factored into a

14

jury's decision to discredit defendants' explanation that she was promoted over Barber because she was a better candidate than him. Therefore, we will reverse and remand for reinstatement of the jury's verdict in favor of Barber on his failure to promote claim.


B.  RETALIATION CLAIM

Barber alleged that Edmonds eliminated the position of Chief Clerk to retaliate for the letter of complaint that Barber wrote to defendants' Human Resources Department, and that this retaliation violated the ADEA.  The ADEA states in part:

> (d)  It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d).  The procedural framework in ADEA retaliation cases also follows that of Title VII disparate treatment cases as set forth in McDonnell Douglas, 411 U.S. at 802-05.  See Geary v. Visitation of Blessed Virgin Mary, 7 F.3d 324, 329 n.4 (3d Cir. 1993).  Thus, to establish a *prima facie* case of retaliation, a plaintiff must show: (1) that he engaged in protected conduct; (2) that he was subject to an adverse employment action subsequent to such activity; and (3) that a causal link exists between the protected activity and the adverse action.  See Jalil

15

v. Advel Corp., 873 F.2d 701, 708 (3d Cir. 1989), cert. denied, 403 U.S. 1023 (1990).

The district court concluded that Barber failed to establish a *prima facie* case of retaliation because he did not demonstrate "that he engaged in protected conduct." Specifically, the court concluded "that the letter written by plaintiff to the Department of Human Resources was not a complaint opposing a practice made unlawful by the ADEA, nor was it a charge against defendants under Section 623 of the ADEA." Barber v. CSX Distribution Servs., No. 92–1241, slip op. at 5 (W.D. Pa. Oct. 6, 1994). As quoted above, Barber's letter to Human Resources complains about unfair treatment in general and expresses his dissatisfaction with the fact that someone else was awarded the position, but it does not specifically complain about age discrimination. Accordingly, the letter does not constitute the requisite "protected conduct" for a *prima facie* case of retaliation.

In reaching this conclusion, it is important to note that we do not require a formal letter of complaint to an employer or the EEOC as the only acceptable indicia of the requisite "protected conduct" under the ADEA. See, e.g., Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (explaining that acceptable forms of protected activity under Title VII's analogous opposition clause include formal charges of discrimination "as well as informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing

16

support of co-workers who have filed formal charges"). It is neither necessary, nor appropriate to here attempt to define with precision the type of conduct that will give rise to a retaliation claim under the ADEA. Our analysis requires only that we analyze the message that Barber conveyed, and not the medium of conveyance.

Barber's letter is just too vague to support a finding that his job was eliminated because he engaged in behavior that was protected under the ADEA. A person has engaged in "protected conduct" when s/he "has opposed any practice made unlawful by . . . section [623]." 29 U.S.C. § 623(d). The practice made unlawful by § 623 is "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such an individual's age." 29 U.S.C. § 623(a). Thus, the statute provides that a person has engaged in "protected conduct" when s/he opposes discrimination on the basis of age. It is clear from Barber's letter that he felt that he had been treated unfairly as he stated that "the position was awarded to a less qualified individual." However, that letter does not explicitly or implicitly allege that age was the reason for the alleged unfairness. A general complaint of unfair treatment does not translate into a charge of illegal age discrimination. The jury was not presented with any evidence to support its conclusion that Barber's position was eliminated because he engaged in protected activity. Accordingly, the district court properly granted the defendants' motion for judgment as a matter of law on that portion of Barber's claim.

17

### III. CONCLUSION

For the reasons stated above, we will reverse the order of judgment as a matter of law and remand the matter for reinstatement of the jury verdict in favor of Barber relative to the age discrimination claim but affirm the order of judgment as a matter of law on the retaliation claim.