

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-6-2009

# Tony Hood v. Pfizer Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1434

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Tony Hood v. Pfizer Inc" (2009). *2009 Decisions.* Paper 1583.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1583

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-1434
_____

TONY HOOD,

Appellant

v.

PFIZER, INC.;

On Appeal From the United States District Court
for the District of New Jersey
(No. 04-03836)
District Judge:  Honorable Stanley R. Chesler

Submitted Under Third Circuit LAR 34.1(a)
November 21, 2008

Before: BARRY and CHAGARES, <u>Circuit</u> <u>Judges</u>, and RESTANI,* <u>Judge</u>

(Filed April 06, 2009)

_____

OPINION OF THE COURT
_____

_____

* Honorable Jane A. Restani, Chief Judge, United States Court of International
Trade, sitting by designation.

CHAGARES, Circuit Judge.

Tony Hood appeals from a grant of summary judgment in favor of Pfizer, his former employer, on his state-law discrimination and retaliation action. We will affirm.

I.

Because we write solely for the parties, we will only briefly summarize the essential facts. And because we are reviewing the grant of a motion for summary judgment, we will mention only those facts that are not in dispute.

In August 2001, Pfizer hired Hood, who is African-American, to work as an associate product manager in its consumer healthcare division. He was assigned to the marketing campaign for the heartburn drug Zantac. In February 2002, Marc Kube, who is Caucasian, became Hood's immediate supervisor.

In March 2002, Kube began to hear reports of, and in some cases observe directly, what he perceived to be Hood's poor job performance. For example, Hood refused to prepare a monthly report called a "brand commentary" when Kube asked him to do so. See Appendix (App.) 99-100. And Marion Wood, a marketing reserach manager on the Zantac team, told Kube that Hood had missed certain project deadlines. See App. 83.

Hood had complaints, too. Kube occasionally took responsibilities away from him and assigned them to Wood and to Robert Weitzenhofer, who are both Caucasian. App. 292. Weitzenhofer was Hood's subordinate who himself had past job-performance issues. App. 182-91. Also, Kube missed scheduled meetings with Hood more often than

2

he did with Weitzenhofer.  App. 292.

In July 2002, Kube met with Hood to discuss these and similar issues as part of a mid-year performance review.  Kube also gave Hood several suggestions for improvement, including to increase his "face-time" with Kube at the office.  See App. 102.  Hood heeded this recommendation at first, but eventually the amount of his in-person interaction with Kube dwindled.  See App. 98.

Sometime during Fall 2002, Hood, along with about 500 other Pfizer employees, attended a company-wide meeting.  During a "town hall" portion of the meeting, Hood stood up and asked Pfizer's president "why Pfizer wasn't doing more to promote diversity within the company."  App. 293.  The president did not answer the question.  Immediately after the meeting, the company's highest-ranking African-American executive met with Hood and suggested that Hood's question was inappropriate.

Kube met with Hood several more times beginning in December 2002 and Kube repeated largely the same criticisms and suggestions he raised during their July 2002 meeting.  See, e.g., App. 74-77.  These meetings culminated in a February 2003 discussion of Hood's performance review covering his 2002 work.  At the meeting, Kube noted further performance problems.  Kube told Hood that Hood's written review concluded that Hood needed too much supervision to complete projects.  He also told Hood that representatives of the outside advertising agency working with Pfizer's Zantac marketing team complained about Hood to Kube and requested that he remove Hood

3

from the team. App. 201. Kube told Hood that his work was still below par, and that he would be placed on a performance improvement plan (PIP) – a 60-day program involving expressly delineated objectives and consistent monitoring to determine whether those objectives were being met. The PIP began in mid-April 2003.

Hood felt that his negative review was unjustified and lodged an internal complaint with Deborah Conliffe in the company's human resources department. Hood did not, however, identify his race as a factor motivating Kube. Conliffe agreed to investigate. She interviewed, among others, Wood and Weitzenhofer, each of whom reported positive experiences working under Kube. She also interviewed Joanna Reddick, who was not part of the Zantac team but who had previously worked with Kube on one of Pfizer's employee recruitment efforts. Reddick, who is African-American, said Kube had in the past made race-related comments that made her feel uncomfortable. See App. 153-54. Conliffe concluded her investigation by recommending that Kube receive coaching to improve his management techniques. App. 157-58.

Meanwhile, Hood was failing to meet the objectives set forth in the PIP. For example, he turned in one project late and in a condition that required significant revisions. See App. 86, 119-20. He also submitted a report containing inaccurate data and told Kube about the inaccuracy only after the report was submitted. See App. 120-22. And he missed a rehearsal for a presentation he was slated to give. See App. 122-24.

The PIP ended in mid-June 2003, and Pfizer fired Hood in July 2003. Hood filed a

4

lawsuit in New Jersey state court claiming that Pfizer terminated him because of his race and gave him an unfavorable performance review and put him on a PIP (both pre-termination) for speaking out at the company meeting. Pfizer removed the case to federal court and moved for summary judgment. The District Court granted the motion, and Hood moved for reconsideration. The District Court denied that motion, and Hood then filed this appeal.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1) and 1442, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

We review the District Court's grant of summary judgment de novo, applying the same standard that it used. Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008). That is, we will view the evidence in the light most favorable to Hood and draw all justifiable, reasonable inferences in his favor. Id. We will affirm if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that [Pfizer] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III.

The New Jersey Law Against Discrimination (NJLAD), N.J. Stat. § 10:5-12(a), makes it unlawful "[f]or an employer, because of the race . . . of any individual . . . . to discriminate against such individual in compensation or in terms, conditions, or privileges

5

of employment . . . ." In the absence of direct evidence of discrimination (as in the present case), a NJLAD plaintiff may prove discrimination according to the burden-shifting framework set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell-Douglas, the plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. 411 U.S. at 802. If the plaintiff succeeds, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's termination. Id. Once the employer meets its relatively light burden, the burden of production returns to the plaintiff, who must show by a preponderance of the evidence that the employer's proffered reason is pretextual. See id. at 804-05. Accordingly, once an employer has proferred a legitimate, nondiscriminatory reason, the plaintiff "generally must submit evidence which: (1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factinfder could reasonably conclude that each reason was a fabrication[1]; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994). Because the ultimate issue is whether "discriminatory animus" motivated the employer, it

---

[1] Where the employer proffers a "bagful" of legitimate reasons, however, the employee may need only to "cast substantial doubt on a fair number of them." Id. This is because discrediting a "fair number" of the employer's proffered reasons "may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available." Fuentes v. Perskie, 32 F.3d 759, 764 n.7 (3d Cir. 1994).

is not enough to show that the employer made a wrong or mistaken decision. Rather, the plaintiff must uncover "weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's explanation that would allow a reasonable factfinder to believe that the employer did not truly act for the asserted reason. Id. at 765.

A.

There is no debate that Hood has established a prima facie case of race discrimination. Pfizer then proffered a "bagful," Fuentes, 32 F.3d at 764 n.7, of legitimate, performance-based, non-discriminatory reasons for the firing. Hood has attempted to challenge most of those reasons. As we will explain, Hood is unable to "impede [Pfizer's] credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available." Id.

Pfizer claims that Hood shirked his job responsibilities in declining to write a brand commentary when Kube asked him to do so. Hood admitted that he declined to write the commentary but that he did so because he believed it was not in his job description. At most, this shows that Pfizer misjudged the scope of Hood's job responsibilities. That Pfizer was "wrong or mistaken" about that scope, however, is insufficient to defeat summary judgment. Fuentes, 32 F.3d at 764. It does not demonstrate any "inconsistenc[y]" between Pfizer's proffered reason and Pfizer's perception of Hood's behavior. Id.; see Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d

7

Cir. 1991) (holding that employee's "view of his performance is not at issue; what matters is the perception of the decision maker").

Pfizer claims that Hood did not follow Kube's directions to put in more time at the office where Kube could visibly observe Hood's performance. Hood admitted that he failed to increase the frequency of in-person meetings with Kube but argued that Kube was to blame. The deposition testimony Hood cites in support, however, states merely that, after a period where he and Kube met quite often, the face-to-face aspect of their relationship just "faded away." App. 98. It gives no indication that Kube is at all responsible, much less completely responsible, for this breakdown. The rest of Hood's deposition testimony contains no shortage of buck-passing and blame-deflecting, so it would be unreasonable (and therefore inappropriate on summary judgment) to infer Kube's total or even substantial responsibility where Hood did not allege it. Hood's own testimony, then, establishes not only that Pfizer perceived Hood did not accomplish the face-time goal — which would suffice to meet its burden, see Billet, 940 F.2d at 825 — but that Hood in fact did not accomplish the goal.

Pfizer claims that Wood told Kube that Hood missed a deadline on a particular project. Hood testified that he did not miss any deadlines and that he told Kube as much. See App. 82-83. That, however, is beside the point. It may not have been "wise, shrewd, prudent, or [even] competent" for Pfizer to credit a co-worker's word over Kube's, but this merely demonstrates that Pfizer may have been a bad judge of credibility, not that it

8

violated the NJLAD.  Fuentes, 32 F.3d at 764.

Pfizer claims that Hood received a negative performance review and, as a consequence, was put on a PIP.  Hood does not dispute this.  He testified, however, that he was given no prior warning of his sub-par performance.  See App. 101.  But this cannot defeat summary judgment, because Pfizer had no duty to warn in the first place.  See Healy v. New York Life Ins. Co., 860 F.2d 1209, 1216 (3d Cir. 1988) ("Although we can sympathize with Healy's situation and observe that employees will perform better if they receive feedback, we note that from a legal perspective managers are not compelled to convey their dissatisfaction to employees.").

Pfizer claims that Hood failed to prepare properly for a presentation to senior management.  Hood does not dispute this, but testified that he warned Kube in advance that he might have to miss a rehearsal because he was planning to take some time off to spend with his family.  See App. 122-24.  We commend Hood's attempt to balance his family life and his job responsibilities, but at bottom, scheduling the vacation was Hood's choice to make.  Holding that against him may have been insensitive, but Pfizer was entitled to do it.

Pfizer claims that Hood submitted certain monthly reports containing inaccurate information.  Hood testified that he did indeed submit such reports, but that, after he turned them in, he spoke with Kube, explained that he included inaccurate information because accurate information was not available at the time the reports were due, and

9

agreed with Kube on how best to handle the matter prospectively. See App. 121. That is, Hood admitted to turning in a defective report and raising the issue with Kube only after the fact. Perhaps Pfizer overreacted in blaming Hood for failing to discuss the issue with Kube before Hood prepared the report, but "'federal courts are not arbitral boards ruling on the strength of cause for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].'" Keller v. Orix Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997) (en banc) (quoting Carson v. Bethlehem Steel Corp, 82 F.3d 157, 159 (7th Cir. 1996)) (alteration in original). There is no inconsistency or incoherency here that would block summary judgment. Pfizer claimed it fired Hood in part for his inaccurate reports, and Hood admitted that certain reports he submitted were inaccurate.

Pfizer claims that, while on the PIP, Hood turned in a document late and in a condition requiring substantial revisions. Hood disputes what generated the need for those revisions, but not the need itself. Pfizer may have wrongly attributed the need for revisions to Hood's incompetence rather than to external factors, but, as discussed extensively above, well-worn principles of employment discrimination law give Pfizer the right to make that judgment.

Hood does not even attempt to contest Pfizer's claim that representatives from the outside advertising agency working with the company on a marketing campaign complained to Kube to have Kube remove Hood from the project altogether. Again, it is

10

immaterial whether this negative feedback from the outside agency was justified. Pfizer chose to credit it, and that choice does not impugn its legitimacy as a proffered non-discriminatory reason for terminating Hood.[2]

At bottom, Hood admits the primary conduct (or, in certain instances, reports of primary conduct) upon which Pfizer focused. He provides explanations for that behavior that make him seem less culpable than Pfizer may have made him out to be. But that is not enough to withstand summary judgment. Hood does not contest that Pfizer saw what it claims it saw (or heard what it claims it heard). Pfizer's proffered reasons for

---

[2] Hood notes that he never had a negative job evaluation until Kube became his boss. He then cites several cases, all from the Court of Appeals for the Second Circuit, that he claims support the proposition that a lack of negative job evaluations before the period where the discrimination allegedly occurred supports an inference that proffered legitimate reasons are pretextual. See Appellant's Br. at 11 (citing Zimmermann v. Associates First Capital Corp., 251 F.3d 376, 382-83 (2d Cir. 2001); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 137 (2d Cir. 2000); Heyman v. Queens Village Committee for Mental Health for Jamaica Comunity Adolescent Program, Inc., 198 F.3d 68, 73 (2d Cir. 2000)). Hood is mistaken.

In each of those cases, the employer proffered a performance-related reason for firing the employee, and the employee then pointed out that the employer had little (if any) documentation of the alleged misconduct. See 251 F.3d at 379-80; 202 F.3d at 137; 198 F.3d at 71. This, the Court of Appeals for the Second Circuit held, could support an inference that the performance-based reason was a mere fabrication — an afterthought — and that race was the real driving force. So understood, these cases have no application here. Those plaintiffs denied the underlying primary conduct, and those denials were strong in light of the employers' lack of contemporaneous documentation. Hood, by contrast, admits the primary conduct that irked Pfizer; he just tries to explain why he engaged in it. And at the risk of bringing coals to Newcastle, we note that, to the extent these out-of-circuit cases put any weight on the employer's failure to contemporaneously notify the employee of its dissatisfaction, they conflict with our precedent and carry no weight. Healy, 860 F.2d at 1216.

terminating Hood are not at all inconsistent with those observations. We conclude, then, that a reasonable factfinder could not conclude, by a preponderance of the evidence, that Hood was terminated on any grounds unrelated to the numerous, materially uncontroverted episodes of underperformance recounted above, much less on unlawfully discriminatory grounds. Therefore, Hood has not cast sufficient doubt on Pfizer's proferred legitimate reasons to defeat summary judgment.

B.

Hood also has failed to identify evidence that would allow a reasonable factfinder to determine that discrimination was more likely than not a determinative factor in his termination. Hood argues that several pieces of evidence purportedly demonstrating Kube's preferential treatment of two Caucasian employees, disparaging race-related treatment of another African-American employee, and general inability to deal with non-Caucasians, would allow a reasonable factfinder to conclude that race was more likely than not a motivating or determinative cause of his termination. We disagree.

Though we do not "weigh" evidence in considering a summary judgment motion, we are obligated to consider the totality of the evidence – and not merely the evidence the employee claims supports his argument. See Keller, 130 F.3d at 1113. Considering the totality of the evidence – including that identified above concerning Hood's insubordination and underperformance, see id. – we hold that a reasonable factfinder could not find that the proof is sufficient to establish by a preponderance of the evidence

12

that race was a determinative factor in Hood's termination.

IV.

The NJLAD also makes it unlawful "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act . . . ." N.J. Stat. § 10:5-12(d). Hood claims that his poor 2002 performance review and subsequently placement on an improvement plan constitutes impermissible retaliation for openly criticizing the company's track-record for diversity at the "town hall" portion of a large company meeting.[3] We disagree.

To establish a prima facie case of retaliation, Hood must show "(1) that he engaged in protected conduct; (2) that he was subject to an adverse employment action subsequent to such activity; and (3) that a causal link exists between the protected activity and the adverse action." Barber v. CSX Distrib. Servs., 68 F.3d 694, 701 (3d Cir. 1995). Hood cannot establish the first element.

A reasonable factfinder could not conclude that Hood accused Pfizer of discrimination in violation of the NJLAD. Hood asked, at the meeting, "why more wasn't being done to promote diversity within [his department]." App. 293. This statement expresses a generalized concern about the extent of Pfizer's marketing department's

---

[3] In his appellate brief, Hood indicates several other grounds for retaliation. See Appellant's Br. at 31. However, in his brief to the District Court opposing summary judgment, Hood raised only the comment he made at the meeting, see Supplemental Appendix 20-21, so we will consider only that ground.

affirmative diversity efforts, and Hood concedes that NJLAD says nothing about such efforts, see Appellant's Br. at 33-34. It is worlds apart from the kind of particularized statement targeting discrete past events that this Court has held allows an employment discrimination plaintiff's retaliation claim to survive summary judgment. Compare Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) (holding that plaintiff's statement, complaining about fellow employee's specific comments and made to that employee's supervisor in front of that employee, constitutes protected conduct) with Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 134-35 (3d Cir. 2006) (holding that "basic [] advocacy" against a practice does not constitute protected activity for retaliation claim) and Barber, 68 F.3d at 702 (holding that letter written by rejected job applicant that "complains about unfair treatment in general" is not protected). To be sure, Hood's comment here falls between the conduct we held protected in Moore and the conduct we held unprotected in Curay-Cramer and Barber. We find, however, that Hood's comment is much closer to those latter two cases than to the former. And, in any event, Hood has pointed us to no case in which we reversed a grant of summary judgment on a retaliation claim based upon a comment or remark less specific than those in Moore.

Accordingly, we hold that Hood did not point to evidence demonstrating a genuine issue of material fact with respect to whether he could satisfy the first element of the required prima facie case.

14

V.

For the reasons articulated above, we will affirm the District Court's grant of summary judgment for Pfizer.