**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2882
_____

CAROLINE ELDRIDGE,

Appellant

v.

MUNICIPALITY OF NORRISTOWN
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 10-cv-02143)
District Judge:  Honorable Anita B. Brody
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 5, 2013

Before:  RENDELL, FISHER and GARTH, Circuit Judges

(Opinion filed:  March 6, 2013)
_____

OPINION
_____

PER CURIAM

        In May 2010, Caroline Eldridge filed a complaint in the United States District

Court for the Eastern District of Pennsylvania against her former employer, the

Municipality of Norristown, alleging that her termination was the result of disparate

treatment and retaliation in violation of, <u>inter alia</u>, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u>, and the Pennsylvania Human Rights Act (PHRA), 43 Pa. Cons. Stat. § 951 <u>et seq.</u> Norristown moved for summary judgment, asserting that Eldridge's termination was the result of her substandard performance. In November 2011, the District Court granted Norristown's motion on Eldridge's retaliation claims, but permitted her disparate treatment claims to go forward. Following a jury trial in June 2012, judgment was entered in Norristown's favor on the disparate treatment claims as well. Eldridge, proceeding <u>pro se</u>, now seeks review of the District Court's order granting summary judgment to Norristown on her retaliation claims. For the following reasons, we will affirm.

## I.

Because we write primarily for the parties, we need only recite the facts necessary for our discussion. In February 2007, Norristown hired Eldridge, an African-American female, as a Human Resources (HR) manager. David Forrest, a Caucasian male, became Eldridge's supervisor in May 2007. The relationship between Forrest and Eldridge progressively deteriorated as a result of several incidents in the workplace. Forrest ultimately terminated Eldridge in February 2009.

In her amended complaint, Eldridge claimed that she was terminated in retaliation for three specific incidents. The first incident took place in April 2008, when Forrest held a counseling session with Eldridge to review certain conduct in the workplace that

2

he found inappropriate. After the counseling session, Eldridge filed a complaint against Forrest alleging that he had reprimanded her because of her race and gender.[1]

The next two incidents occurred when Eldridge "reported what she perceived in good faith to be violations of the federal and state civil rights law[s] concerning other employees." (Am. Compl., dkt # 20, ¶ 69.) First, at some point during her employment with Norristown, Eldridge learned that another employee, Devon Vann, may have been engaging in criminal activity while on the job. Eldridge soon learned that Vann had a criminal history. When Eldridge relayed this information to Forrest, he instructed her to obtain a copy of Vann's criminal record. According to Eldridge, she then expressed concern to Forrest that Norristown's attempt to obtain Vann's criminal record – which was evidently a juvenile record – was a violation of his civil rights.

The second time Eldridge reported a "civil rights" violation was in February 2009, shortly before she was terminated. That month, Norristown posted a job opening for a secretarial position in the police department. Sharnel Pearson and Danielle Hodo, two African-American women who were employed by Norristown in other positions, applied for the job. On February 10, 2009, Eldridge, along with three other employees, interviewed the candidates. Two days later, Eldridge sent an email to Forrest expressing concern about some of the questions that were posed to Hodo, but not to Pearson. According to Eldridge, certain questions delved too deeply into Hodo's personal

---

[1] Norristown hired outside counsel to investigate Eldridge's allegations of discrimination. Counsel ultimately concluded that Eldridge's allegations were baseless.

experience with the police department. Eldridge stated that "[i]t is very important that we remain consistent on how we conduct ourselves while interviewing. I am concerned that [Hodo]'s civil liberties were violated." (Appellee's Supp. App. 0016.) Forrest and Police Chief Russell Bono later informed Eldridge that they had serious concerns about Hodo because of her criminal history and other negative interactions with the police, and told Eldridge that she was undermining the municipality by advocating for Hodo.

According to Eldridge, Norristown ultimately terminated her in retaliation for her actions during these incidents.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's decision granting summary judgment, using the same standard applied by the District Court. See Doe v. Luzerne Cnty., 660 F.3d 169, 174 (3d Cir. 2011). Summary judgment is appropriate when the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The District Court properly analyzed Eldridge's retaliation claims under Title VII according to the familiar burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[2] See Jones v. Sch. Dist. of Phila., 198 F.3d

---

[2] The District Court did not analyze Eldridge's state-law retaliation claim separately because, as it correctly noted, the PHRA is construed consistently with interpretations of Title VII. See Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1084 (3d Cir. 1995).

4

403, 410 (3d Cir. 1999). Under the McDonnell Douglas framework, Eldridge bore the initial burden of establishing a prima facie case of a Title VII violation. See McDonnell Douglas, 411 U.S. at 802. If she succeeded, the burden then would shift to Norristown to "articulate some legitimate, nondiscriminatory reason" for her termination. See id. Eldridge would then have an opportunity to prove by a preponderance of the evidence that the legitimate reason for her termination offered by Norristown was a pretext. See Jones, 198 F.3d at 410.

To establish a prima facie claim of unlawful retaliation, Eldridge was required to show that: (1) she engaged in activity protected by Title VII; (2) Norristown took an adverse action against her; and (3) there was a causal connection between the protected activity and the adverse action taken. See Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006). Title VII defines a protected activity as, inter alia, an instance where an employee has opposed a discriminatory employment practice based upon an individual's race, color, religion, sex, or national origin. 42 U.S.C. §§ 2000e-2(a)(1); 2000e-3(a).

In its motion for summary judgment, Norristown argued that Eldridge had failed to establish a prima facie case of retaliation because she had not demonstrated that she was terminated as a result of a protected activity. In response, Eldridge maintained that the February 12, 2009 email she sent to Forrest expressing concern about the Hodo interview was protected activity, and that the proximity in time between the email and her termination – less than one week – established the requisite causal connection. We agree with the District Court that Eldridge's email does not constitute protected activity under

5

Title VII. Although the email raised a general concern about the propriety – even legality – of certain questions posed to Hodo, it did not allege any type of discrimination recognized by Title VII. Indeed, the record reflects that the comparator candidate, Pearson, was also an African-American female. Therefore, the District Court correctly concluded that Eldridge failed to establish the first prong of her prima facie retaliation case.[3] See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006) ("A general complaint of unfair treatment is insufficient to establish protected activity under Title VII."); Cf. Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-02 (3d Cir. 1995) (explaining that letter to HR complaining that position was given to less qualified candidate was not protected activity under the Age Discrimination in Employment Act because it did not explicitly or implicitly allege that age was the basis for the adverse employment action).

On appeal, Eldridge complains that the District Court failed to consider whether the other incidents she cited in support of her retaliation claims – namely, the allegations of discrimination she made in June 2008, and her email expressing concern about the propriety of requesting Vann's criminal record – constituted protected activity. It appears that the District Court declined to consider these incidents in the context of her retaliation

_____

[3] To the extent that Eldridge argues that summary judgment was inappropriate because there was a genuine issue of fact as to whether her February 12, 2009 email alleged discrimination, we disagree. We have reviewed the email and conclude that no reasonable juror could have found that the email alleged discrimination on the basis of race, color, religion, sex, or national origin.

claim because Eldridge did not address them in her counseled brief in opposition to Norristown's summary judgment motion. We see no error in this regard. See Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (explaining that the party opposing summary judgment may not rest upon the mere allegations of the complaint, but must set forth specific facts showing that there is a genuine issue for trial). In any event, we have reviewed the record and conclude that, even considering these incidents, Eldridge failed to establish a prima facie case of retaliation. First, like the email that Eldridge sent to Forrest about the Hodo interview, the email she sent about Vann's background is not protected activity because it did not allege any discrimination. Furthermore, while Eldridge's allegations of race and gender discrimination in June 2008 could be considered protected activity, they are not linked to her subsequent termination through temporal proximity or a sufficient record of ongoing antagonism. See Woodson v. Scott Paper Co., 109 F.3d 913, 920–21 (3d Cir. 1997) ("[T]emporal proximity . . . is sufficient to establish the causal link. . . . [A] plaintiff can [also] establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period."). Accordingly, because Eldridge failed to establish a prima facie case of retaliation, the District Court properly granted summary judgment to Norristown on her claims under Title VII and the PHRA.[4]

---

[4] Because we conclude that the District Court properly granted summary judgment to Norristown on Eldridge's retaliation claims, we need not reach Norristown's argument on appeal that Eldridge should be estopped from arguing that race or gender were determinative factors in her termination.

7

III.

For the foregoing reasons, we will affirm the District Court's order granting Norristown's motion for summary judgment.