**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1993
_____

SHAWN D. MERKE,
                                        Appellant

v.

LOCKHEED MARTIN, A Maryland Corporation
Having Offices and Doing Business Locally;
GRETCHEN PEACOCK, Individually and in her
Professional Capacity as Manager of
Defendant Lockheed-Martin
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-12-cv-06995)
District Judge: Hon. Mark A. Kearney
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 26, 2016
_____

Before: JORDAN, VANASKIE, and SHWARTZ, *Circuit Judges*.

(Opinion Filed: March 22, 2016)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellant Shawn Merke appeals the grant of summary judgment entered against him on his employment discrimination and retaliation claims. The District Court found that Merke failed to produce evidence sufficient to support an inference that he had engaged in protected activity or that his discharge was motivated by a discriminatory animus. Having reviewed the record de novo, we agree with the District Court's assessment of the record. Accordingly, we will affirm the grant of summary judgment.

I.

Appellant Shawn Merke is an African-American man who worked for Appellee Lockheed Martin for more than twenty-nine years. He worked as a Senior Engineering Manager in the Spatial Solutions ("S2") unit in Valley Forge, Pennsylvania for some of his time at Lockheed. In this position, Merke led a team of engineers and worked closely with program managers. In performance reviews in 2010 and 2011, multiple Lockheed employees, including Merke's then-supervisor, Tom Wilson, noted that Merke had trouble getting his team members to respond to and trust him and advised Merke that some program managers had expressed an inability to work effectively with him. Wilson suggested finding Merke a new role within Lockheed that would not involve direct supervision of others.

The S2 unit experienced a substantial decline in business, with revenue falling from approximately $1 billion in 2010 to $600 million in only two years. With the decrease in work came efforts to reduce payroll, and Lockheed began using more junior engineers to offer more competitive pricing. In May of 2011, Lockheed decided to

2

reorganize the S2 unit to "streamline and de-layer the S2 organization to create increased efficiency, focused initiatives for growth and sustained outstanding program performance." J.A. 990. As part of the reorganization, Wilson moved to a new position as the Spatial Security Programs Director and Appellee Gretchen Peacock became the acting S2 Technical Director, in charge of supervising Merke. By September of 2011, Lockheed appointed Peacock as S2's Technical Director.

Peacock and Merke began discussing Merke's career aspirations and his desire to become more involved in sales and marketing. In December of 2011, Peacock told Merke that he may be able to do so, but not if he remained a Senior Engineering Manager. When, as part of the S2 reorganization, Lockheed gave the Senior Engineering Manager position broader responsibilities, Peacock moved Merke out of the position and put him on her Technical Staff, advising him that she intended to find him another position. Although Merke no longer had anyone reporting to him, he asked Peacock if he could retain his "Leader" job code "until a [full-time] permanent position is identified." J.A. 1000. Peacock agreed to let Merke retain the job code and sent emails to managers in other units to help Merke find a new position within the company.

On April 25, 2012, Merke attended a company meeting discussing the restructuring plan and the types of opportunities that were available within the company. Peacock met with Merke later that same day and notified him that she did not have any billable assignments for him and that they needed to find him a new job assignment. Merke claims that, during that meeting, he complained to Peacock that he "felt singled

3

out and did not understand why he had been promised work assignments and moved from his position as a Senior Engineering Manager only to be left without a single assignment for a substantial number of months."[1]  Appellant Br. 9.

Lockheed determined that, as part of the continuing reorganization of the S2 unit, it needed to terminate someone at Merke's employment grade.  In determining which employee to lay off, Lockheed utilized a "community of interest" analysis in which it compared employees with similar skills on a series of criteria to make an objective ranking of employees.  Lockheed determined that Merke and another employee, Bill Fields, were the "bottom two in the evaluation of relevant skill sets."  J.A. 1080. Lockheed further documented that Merke did not have "recent relevant experience . . . working as a technical lead on a proposal" and that Fields had been working on such proposals full-time for months.  J.A. 1080.  Lockheed ultimately chose to lay off Merke. Three other management positions in the engineering unit were eliminated around the same time as the elimination of Merke's position, two of which were held by white men and one of which was held by an African-American man.

On May 10, 2012, Peacock sent Merke written notice that his assignment would be ending and that he needed to find a new assignment or he would be laid off on June 22, 2012.  Merke alleges that he then complained in an email to Human Resources representative Chanda Guth that he received a notice of termination after his April 25th

---

[1] Merke was unable to point to a basis in the record showing that he made such complaints at the April 25, 2012 meeting.

confrontation with Peacock about his lack of work.[2]  Peacock sent Merke another letter

on June 4, 2012, advising him that he would be laid off on June 29, 2012[3] because of

"certain business conditions which require a reduction in force," although she encouraged

him to apply to other job positions within the company.  J.A. 1092.

Merke ultimately was unable to find a new assignment and was terminated,

effective June 29, 2012.  As to the other three employees whose positions were

eliminated, one, an African-American male, found another position at Lockheed, but the

two others, who were both Caucasian, did not.  Merke concedes that no one at Lockheed,

including Peacock, ever made any comment or reference to his race and that he never

addressed Peacock or anyone else at Lockheed with any issues with regard to his

treatment because of his race.

Merke filed a complaint in the District Court for the Eastern District of

Pennsylvania under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the

Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 955, alleging that: (1)

Appellees engaged in employment discrimination against him by terminating him from

his job because of his race; and (2) Appellees unlawfully retaliated against him by

terminating him from his job for engaging in protected activity.  The District Court

granted summary judgment in favor of Appellees, finding that Merke did not provide

---

[2] Although Merke provides evidence that he sent an email to Chanda Guth, he does not point to any evidence in the record of the contents of the email.

[3] Merke's nephew died in June 2012, requiring Merke to miss time from work. Lockheed then pushed back the date that Merke would be laid off to allow him additional time to search for a job.

sufficient evidence to state a case for discrimination based on either race or retaliation for engaging in protected conduct.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. We have appellate jurisdiction under 28 U.S.C. § 1291. Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We undertake plenary review of the District Court's grant of summary judgment, viewing the evidence "in the light most favorable to the nonmoving party." *Heffernan v. City of Paterson*, 777 F.3d 147, 151 (3d Cir. 2015) (citations and internal quotation marks omitted), *cert. granted*, 136 S. Ct. 29 (2015). However, "the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (alterations in original) (citations and internal quotation marks omitted).

## III.

We evaluate Merke's claims using the three-part burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).[4] In discrimination suits like this, (1) a plaintiff must establish a prima facie case of racial

---

[4] The same analytical framework is used for employment discrimination and retaliation claims under Title VII § 1981 and the Pennsylvania Human Relations Act. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1993). The parties agree that "there is no direct evidence of discrimination," and that the *McDonnell Douglas* framework thus applies to Merke's discrimination claims. J.A. 12.

discrimination; (2) the burden then shifts "to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection"; and (3) the plaintiff must "be afforded a fair opportunity to show that [employer's] stated reason for [plaintiff's] rejection was in fact pretext." *Iadimarco v. Runyon*, 190 F.3d 151, 157–58 (3d Cir. 1999) (alterations in original) (citations and internal quotation marks omitted).

### A.

To establish a *prima facie* case of discrimination on the basis of race, a plaintiff must show by a preponderance of the evidence that: (1) he belongs to a protected class; (2) he was qualified for the position held; (3) he suffered adverse employment action; and (4) the adverse employment action gave rise to an inference of discrimination (such as by replacing the plaintiff with someone not in the protected class). *See Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 249 (3d Cir. 2002). Although Merke met the first three prongs of the test, he did not present evidence that permits an inference that his layoff was motivated by racial discrimination.

The undisputed record shows that Lockheed was undergoing a reorganization and laid off several employees as a result of decreased work. Merke was not the only employee who was at risk for or ended up losing his job because of the reorganization— and the other at-risk employees were both African-American and white. Merke has not provided any evidence that his race played a role in how he was treated at work or why he ultimately was laid off, other than his own subjective opinion that he received

7

disparate treatment because of his race.[5]  As such, Merke has not shown a prima facie

case for racial discrimination and the District Court was correct in granting summary

judgment in favor of Appellees on this claim.

B.

To show a prima facie case of retaliation, a plaintiff must establish that: (1) he

engaged in protected activity; (2) the employer took adverse action against him after or

contemporaneous with the activity; and (3) there is a causal link between the protected

activity and the adverse action.  *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d

Cir. 1997).  The District Court granted summary judgment in favor of Lockheed and

Peacock because there was no evidence that Merke had engaged in protected activity, the

first prong of a prima facie case of retaliation.

The federal and state employment discrimination laws make it illegal for an

employer to retaliate against an employee for "oppos[ing] any practice" made unlawful

by their substantive provisions.  42 U.S.C. § 2000e-3(a); 43 Pa. Cons. Stat. Ann. §

955(d).  "For purposes of the first prong of a prima facie case of retaliation, protected

'opposition' activity includes not only an employee's filing of formal charges of

discrimination against an employer but also informal protests of discriminatory

---

[5] Merke argues that procedural irregularities in how he was terminated support an inference that he was treated differently because of his race.  For instance, he asserts that Peacock was supposed to give him 30 days' notice and only gave him 29 days' notice and that Peacock did not advise him of his lay-off in a face-to-face meeting.  Merke has not provided any evidence to suggest that these minor irregularities were intentional or racially-motivated and they do not support an inference that race was involved.

employment practices, including making complaints to management." *Daniels v. School Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (citations and internal quotation marks omitted). The plaintiff must present evidence that "the opposition was to discrimination based on a protected category, such as age or race." *Id.* "Moreover, the employee's 'opposition' to unlawful discrimination must not be equivocal." *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (citation omitted).

Merke claims that he engaged in protected activity when he complained to Peacock on April 25, 2012 and when he wrote the email to Chanda Guth about his termination notice. Although acknowledging that he did not explicitly complain of racial discrimination, Merke contends that because he is an African-American male and the other members of his team were almost exclusively white, it was "clear that he believed that his unjust treatment was directly related to his demographic status on Peacock's Technical Staff." Appellant Br. at 50. Nonetheless, there is nothing in the record that supports an inference that he had articulated a claim of race-based or any other kind of discrimination. His descriptions of his "complaints" are simply too vague and general "to support a finding that his job was eliminated because he engaged in behavior that was protected under the [employment discrimination laws]." *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995). Merke concedes that he never spoke with anyone in Human Resources or elsewhere at Lockheed alleging discriminatory treatment. Thus, Merke cannot substantiate the first element of a prima facie case of retaliation as he has

9

not provided evidence that he engaged in protected activity. The District Court was thus correct in granting summary judgment in favor of Appellees with regard to this claim.

IV.

For the reasons set forth herein, we hold that Merke has failed to establish a genuine issue of material fact regarding whether Appellees unlawfully discriminated against him on the basis of race or on the basis of retaliation. Accordingly, we will affirm the District Court's order dated March 18, 2015, granting summary judgment in favor of Appellees.